**UNITED STATES of America, Plaintiff,**

v.

**A–A–A ELECTRICAL COMPANY, INC., and William T. Wilson, Defendants.**

**Nos. 84–41–01–CR–5, 84–41–02–CR–5.**

United States District Court,
E.D. North Carolina,
Raleigh Division.

Jan. 8, 1985.

John R. Fitzpatrick, Christopher A. Wagner, Karen Sedora Morgan, Antitrust Division, U.S. Dept. of Justice, Atlanta, Ga., for United States.

Michael A. Doyle, Alston and Bird, Atlanta, Ga., William P. Pinna, Pinna and Johnson, P.A., Raleigh, N.C., James L. Nelson, Wilmington, N.C., for A–A–A Electrical Co., Inc.

ORDER

JAMES C. FOX, District Judge.

This action is before the court on objections to the Magistrate's recommendation filed November 5, 1984. Defendants' motion in limine on evidentiary aspects of interstate commerce effects, plea in bar and motion to dismiss indictments, and motion to stay the Magistrate's October 25, 1984, order on limited disclosure of grand jury testimony, are also before the court.

Defendants' objections to the Magistrate's recommendation primarily center around the statute of limitations issue. The indictment charges a combination and conspiracy in unreasonable restraint of interstate trade and commerce in violation of the Sherman Act, 15 U.S.C. § 1. It is alleged that this conspiracy began sometime prior to June 25, 1979, and continued until at least May 9, 1980. The indictment results from the alleged activities of the defendants and others in respect of the relocation of the National Weather Service (NWS) facilities at the Raleigh-Durham Airport (RDU) and the invitation to electrical construction contractors to submit competitive bids on the relocation project. The bid letting occurred on June 25, 1979. About July 5, 1979, RDU awarded the contract to the low bidder, defendant A-A-A Electrical Co., Inc. (A-A-A) in the amount of $66,324.00. The defendants contend that the alleged crime was committed, and the restraint on trade and commerce forbidden by the Sherman Act occurred prior to and at the time of the award of the contract. Therefore, defendants contend, the crime was complete and the statute of limitations began to run as of this date. Since the indictment was returned on August 28, 1984, more than 5 years after the bid letting and contract award, defendants argue that this prosecution is time barred by 18 U.S.C. § 3282.[1]

The Government contends, however, that several overt acts in furtherance of the alleged conspiracy occurred well within the

---

1. "No person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."

statutory period, that the initial conspiratorial agreement contemplated the performance of these overt acts, and that the conspiracy continued until the performance of these acts; therefore, the Government contends, the prosecution is not time barred. The Government's position is supported by ample authority; accordingly, the Magistrate's recommendation is accepted and the motion to dismiss the indictment on this ground is DENIED. At this juncture, defendants' motion to dismiss aimed at the alleged insufficiencies of the interstate commerce allegations is also DENIED.

■ The Government's proffer shows a $2,000.00 payment by the defendants to each of two (2) alleged collaborators on May 8, 1980, and that payments from RDU to the defendants for the electrical construction work were received within the statutory period. The Government's position is supported by U.S. v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940), where it was concluded that although Sherman Act violations are not dependent "on the 'doing of any act other than the conspiracy'", nevertheless the conspiracy does not necessarily end with the agreement; that the evidence may support a "'continuous cooperation'" among the conspirators "necessary to keep the conspiracy alive"; and, that evidence of the performance of overt acts may properly establish this continuous co-operation without "'any new agreement specifically directed to that act.'" Id. at 252–254, 60 S.Ct. at 857–858.

■ Payoffs made in return for participation in a scheme to rig bids are overt acts in the furtherance of the conspiracy. U.S. v. Walker, 653 F.2d 1343 (9th Cir.1981), reh. and reh. en banc denied 10–15–81, cert. denied 455 U.S. 908, 102 S.Ct. 1253, 71 L.Ed.2d 446 (1982). Cf. U.S. v. CFW Construction Co., 583 F.Supp. 197 (D.S.C. 1984). Walker, supra, also stands for the proposition that the receipt of money (in this case from RDU to the defendants) for the performance of the contract at the arti-

ficial price is an overt act in furtherance of the conspiracy. Id. at 1345–50.

A recent decision from a United States District Court in South Carolina, United States v. C.F.W. Construction Company, Inc., also supports the Government's position. 583 F.Supp. 197 (D.S.C.1984). The court states that with respect to anti-trust charges, a "conspiracy may continue after the commission of the substantive, underlying offense where one overt act in furtherance of the conspiracy occurred within the limitation period. Where a conspiratorial agreement includes a payoff to each conspirator, the conspiracy continues until the conspirators receive their payoffs." Id. at 206. The defendants argue that these payments, which were made subsequent to the formulation of the agreement, have not caused or contributed to a price rise; in other words, that the payments are a result of the crime, not a continuation thereof. Such payments certainly have an adverse effect on competition, however, and encourage further violations of the Sherman Act.

Defendants also filed on November 5, 1984, a motion in limine; specifically, defendants move to exclude any evidence that relates to the purchase or sale of any supplies or goods that were already in the defendants' stock at the time the contract for the Raleigh-Durham project was awarded, or that were not used for the work on that project. The Government argues that this motion is really a motion to suppress, which under local rule 44.00 must be filed no later than ten (10) days after the pre-trial conference.[2] The court agrees that as a motion to suppress, this motion is belatedly filed. Defendants argue that this motion is not a delayed exclusionary motion, but an advance motion on the evidence at trial. Because the court does not know what the evidence in this case will show, however, it is unwilling to limit its admission at this time. Accordingly, defendants' motion in limine is DENIED, but can be renewed at the time the evidence is offered at trial.

2. The pretrial conference in this was held on October 5, 1984.

Defendants' third motion is a plea in bar and motion to dismiss indictments. Specifically, defendants contend that the settlement agreement between the State of North Carolina and themselves bars this prosecution. This settlement agreement does not preclude federal prosecution of the defendants; accordingly, defendants' motion in this regard is DENIED.

Finally, defendants move to stay the effectiveness of the Magistrate's October 25, 1984, order regarding limited disclosure of grand jury testimony. Allowing a witness to review the transcript of his grand jury testimony under the conditions described in the Magistrate's October 9, 1984, order does not penetrate the secrecy of the grand jury proceedings in general. As indicated by the Magistrate, such limited disclosure will have no chilling effect on the availability or willingness of witnesses to appear before the grand jury; nor will it infringe upon the freedom of the grand jury in its deliberations. Accordingly, defendants' motion to stay is DENIED.

SO ORDERED.