THE PEOPLE *ex rel.* NEIL F. HARTIGAN, Attorney General, Plaintiff-Appellant, v. THOMAS N. MOORE *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 84—2305

Opinion filed May 7, 1986.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, and Robert E. Davy and Thomas J. DeMay, Assistant Attorneys General, of Chicago, of counsel), for the People.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Robert E. Nord, of counsel), for appellee Thomas N. Moore.

Donald P. Colleton and James L. Fox, both of Chicago, for appellee S.A. Healy Company.

JUSTICE WHITE delivered the opinion of the court:

The People of the State of Illinois initiated this civil penalty action pursuant to the Illinois Antitrust Act (Ill. Rev. Stat. 1983, ch. 38, par. 60—1 *et seq.*). The trial court dismissed the complaint for failure to state a cause of action and on statute-of-limitations grounds.

On December 6, 1983, the Attorney General filed this action against defendants, Thomas N. Moore, G. Roberts Material Company and Gordon L. Roberts (Roberts), S. A. Healy Company and Harold E. Middleton. All references here are to a pleading therein denominated the new first amended complaint. Count I charges defendants with the *per se* offense of bid rigging in violation of section 3(1) of the Act (Ill. Rev. Stat. 1983, ch. 38, par. 60—3(1)). Count II charges that the same conduct constituted an unreasonable restraint of trade in violation of section 3(2) of the Illinois Antitrust Act. The complaint alleges that Roberts, an excavating, grading and trucking contractor, through an intermediary Middleton, vice-president of Healy Company, bribed Moore, the purchasing agent of the Metropolitan Sanitary District of Chicago (MSD), to subvert the bidding process in the letting to Roberts of a contract for excavation and hauling.

The complaint alleges that in furtherance of this conspiracy all the defendants met to agree on the amount of the bids to be submitted by Roberts on the MSD contract and inserted five different bid price sheets in Roberts' bid proposal. At the letting on November 20, 1979, Moore received all five of Roberts' bids, which were submitted on a

descending scale. Moore selected Roberts' highest bid, which was lower than any of the bids submitted by other contractors, and secretly removed the extra bid sheets from Roberts' proposal. The complaint further alleges that Roberts was awarded the contract on December 6, 1979, and that between December 1979 and January 20, 1980, Moore was paid approximately $10,000 for his involvement in the scheme. On or about July 31, 1980, MSD drew a check payable to Roberts as partial payment for Roberts' work on the contract.

■ First, we address the issue of whether this action is barred by the statute of limitations. Section 7(4) of the Illinois Antitrust Act (Ill. Rev. Stat. 1983, ch. 38, par. 60—7(4)) states in pertinent part:

"The action must be brought within 4 years after the commission of the *act* upon which it is based." (Emphasis added.)

Crucial to the interpretation of section 7(4) is the meaning of the word "act." The Historical & Practice Notes to the Illinois Antitrust Act (Ill. Ann. Stat., ch. 38, par. 60—7, Historical & Practical Notes—1970, at 495-96 (Smith-Hurd 1977)) indicate that the word "act" means the market conduct proscribed in section 3 of the Illinois Antitrust Act. The complaint in the instant case alleges the illegal act to be a combination and conspiracy to fix prices and to obtain a public contract through a bid-rigging scheme. The question now becomes which act or acts committed in furtherance of the conspiracy triggered the running of the statute of limitations. The State maintains that the last overt act in furtherance of the alleged conspiracy triggered the running of the statute. It points out that this particular act—the partial payment by MSD on the contract in July 1980—occurred well within the four years prior to the filing of the action on December 6, 1983. The State therefore asserts that the action should not have been dismissed on statute of limitations grounds. We agree.

Although this is an issue of first impression in Illinois, we draw ample support for our determination from other jurisdictions. In *State v. New York Movers* (1965), 264 N.Y.S.2d 931, 959, 48 Misc. 2d 225, the court construed a similarly worded New York statute and held that "the statute here does not commence running from the initial date of the conspiracy, but rather from the latest overt act committed in pursuance thereof ***." Additionally, many Federal damage antitrust cases have held that the statute of limitations does not begin to run until the day of the award or until payments on a rigged contract are made. (See *City of El Paso v. Darbyshire Steel Co.* (5th Cir. 1978), 575 F.2d 521, *cert. denied* (1979), 439 U.S. 1121, 59 L. Ed. 2d 82, 99 S. Ct. 1033; *F. Buddie Contracting, Inc. v. Seawright* (N.D. Ohio 1984), 595 F. Supp. 422; *Sapienza v. Osleeb* (E.D.N.Y. 1982), 550 F.

Supp. 1304.) Other Federal criminal antitrust actions have held that the statute of limitations does not begin to run until the occurrence of the last overt act in furtherance of the conspiracy. (*United States v. Inryco, Inc.* (9th Cir. 1981), 642 F.2d 290, *cert. dismissed* (1982), 454 U.S. 1167, 71 L. Ed. 2d 324, 102 S. Ct. 1045; *United States v. Walker* (9th Cir. 1981), 653 F.2d 1343, *cert. denied* (1982), 455 U.S. 908, 71 L. Ed. 2d 446, 102 S. Ct. 1253; *United States v. A-A-A Electrical Co.* (E.D.N.C. 1985), 607 F. Supp. 266.) More specifically, "[p]layoffs made in return for participation in a scheme to rig bids are overt acts in the furtherance of the conspiracy." (607 F. Supp. 266, 268.) Also, the receipt of money for the performance of the contract has been held to be an overt act in furtherance of the conspiracy. (607 F. Supp. 266, 268.) The court in *A-A-A Electric Co.* reasoned that "[s]uch payments certainly have an adverse effect on competition, however, and encourage further violations." (607 F. Supp. 266, 268.) On the basis of the foregoing, we hold that the trial court erred when it concluded that the statute of limitations began to run on November 20, 1979, when the rigged bids were submitted. The illegal act charged in the complaint is the conspiracy to fix prices which continued at least until July 1980, when Roberts received a contract payment. This action was filed well within the four-year limitations period and therefore was not time barred.

■■ ■ Next, the trial court dismissed the complaint with prejudice, holding that it did not state a cause of action under the Illinois Antitrust Act in that it failed to allege an agreement between competitors; that it did not allege any injury to competition; and, as to defendant S. A. Healy Company, that it failed to allege facts showing defendant Middleton's acts of participation were within the scope of his authority as an agent of the company. The State moved for leave to amend the complaint in order to cure the pleading shortcomings perceived by the trial judge. The judge denied the motion, with prejudice, "for the purpose of expediting the disposition of this case" through an appellate review of the ruling on the question of the statute of limitations. (See appendix, which consists of a colloquy between the trial court, defense attorney and the State's Attorney regarding the court's ruling and the State's proposed amendments.) A cause of action should not be dismissed with prejudice unless it clearly appears that no set of facts can be proved under the pleading which would entitle the plaintiff to relief. (*People ex rel. Scott v. College Hills Corp.* (1982), 91 Ill. 2d 138, 435 N.E.2d 463.) As indicated above, the dismissal on the basis of the statute of limitations was error. It appears from the nature of the proposed amendments that the inadequacies in

pleadings found by the trial judge were curable.

■ Since we are reversing and remanding, we address the issue regarding the trial court's April 27, 1984, discovery order. The facts pertaining to this issue are as follows. Prior to the State's filing of this action, the Attorney General investigated the matter pursuant to his precomplaint subpoena authority under section 7.2(d) of the Act (Ill. Rev. Stat. 1983, ch. 38, par. 60—7.2(d)). The Attorney General subpoenaed Middleton. Subsequently, Middleton made a sworn statement concerning his involvement in the alleged bid-rigging scheme. Thereafter, on January 24, 1984, defendant Moore made a motion requesting the trial court to order the Attorney General to produce all precomplaint statements or, in the alternative, be barred from directly using them in this action. In its April 27, 1984 order, the trial court construed section 7.2(d) as authorizing the Attorney General's precomplaint subpoena powers but not authorizing the Attorney General to make use of materials properly subpoenaed.

The State maintains that the trial court misconstrued the Act, as there is no language in the Act barring the Attorney General's use of subpoenaed material. We agree. In ascertaining legislative intent, the plain language of the statute must prevail and be given effect. (*People ex rel. Scott v. Schwulst Building Center, Inc.* (1982), 89 Ill. 2d 365, 371, 432 N.E.2d 855.) More specifically:

> "The meaning attached to a statutory provision is derived from an examination of the language of the statute and its purpose [citation]. The statute should be evaluated as a whole; each provision should be construed in connection with every other section and in light of the statute's general purposes [citations]." (*Miller v. Department of Registration & Education* (1979), 75 Ill. 2d 76, 81, 387 N.E.2d 300; see *Chastek v. Anderson* (1981), 83 Ill. 2d 502, 510-11, 416 N.E.2d 247.)

Section 7.2(d) provides in pertinent part:

> "Except as otherwise provided in this Section, no documentary material or transcripts of oral testimony, or copies thereof, in the possession of the Attorney General shall be available for examination by any individual other than an authorized employee of the Attorney General or other law enforcement officials without the consent of the person who produced such material or transcripts." (Ill. Rev. Stat. 1983, ch. 38, par. 60—7.2(d).)

The plain language of the Act only restricts the examination by third parties without the witness' consent; it is silent as to use by the Attorney General. Where the language of a statute is insufficient to de-

termine the intent of the legislature, the court may look to such extrinsic sources as the statute's legislative history. (*Kelly v. Stratton* (N.D. Ill. 1982), 552 F. Supp. 641.) We therefore look to the legislative history of the Act for guidance.

The legislature originally passed the Illinois Antitrust Act in 1965 to provide for effective antitrust enforcement at the State level. In 1969, the Act was amended to give the Attorney General precomplaint subpoena powers to strengthen the Attorney General's enforcement efforts. (See Ill. Ann. Stat. ch. 38, par. 60—1 *et seq.*, Commentary on the 1967 Illinois Antitrust Act, at 439-42 (Smith-Hurd 1977); Ill. Ann. Stat. ch. 38, par. 60—7.2, Historical and Practice Notes— 1970, at 502 (Smith-Hurd 1977); see also Atkins, *State Antitrust Enforcement and Important New Amendments to the Illinois Antitrust Act*, 58 Ill. B.J. 699 (1970).

Upon construing the 1969 amendments, the Illinois Supreme Court in *People v. Crawford Distributing Co.* (1973), 53 Ill. 2d 332, 291 N.E.2d 648, ruled that documents subpoenaed under the 1969 amendment were not unconstitutionally seized by the Attorney General. Six years later, when the case was again before the court in *People v. Crawford Distributing Co.* (1979), 78 Ill. 2d 70, 76, 397 N.E.2d 1362, the court made clear that the Attorney General can use materials that are properly subpoenaed under the Act by stating that charts summarizing invoices subpoenaed from the defendants could be admitted as evidence. 78 Ill. 2d 70, 76-78, 397 N.E.2d 1362.

In 1980, the legislature amended the Act and, apparently, acquiesced in the *Crawford* court's construction of the Act, since it included no express prohibition on the Attorney General's use of subpoenaed material. In Illinois, the legislature is presumed to know the law construing a statutory provision which it adopts. (See, *e.g., Cook v. Dove* (1965), 32 Ill. 2d 109, 113, 203 N.E.2d 892; *Williams v. Crickman* (1980), 81 Ill. 2d 105, 405 N.E.2d 799.) The amendment (section 7.2(d), the provision in question) only addressed the use or examination of the subpoenaed materials by third parties. Specifically, section 7.2(d) provides that no subpoenaed material "shall be available for examination by any individual other than an authorized employee of the Attorney General or other law enforcement officials without the consent of the person who produced such material or transcripts." (Ill. Rev. Stat. 1983, ch. 38, par. 60—7.2(d).) As stated earlier, the plain language of section 7.2(d) merely bars examination of subpoenaed materials by third parties. Use of the materials by the Attorney General does not violate this prohibition or any other provision of the Act. We find no plausible reason to extend the plain language of the Act to

bar such use in the face of the legislative history and the clear purpose of the Act. We add that construing the Act in this matter gives effect to the purpose of the legislation to provide a strong tool for antitrust enforcement.

On the basis of the foregoing, we reverse the April 27, 1984, order of the trial court barring use of precomplaint subpoenaed material, and we reverse the trial court's dismissal of this action and remand for further hearings.

Reversed and remanded.

RIZZI, P.J., and McNAMARA, J., concur.

APPENDIX

THE COURT: Under normal circumstances, I might be persuaded to allow the plaintiff an opportunity to file amended complaints and correct those errors but I think this case has gone beyond that stage and since I have already ruled on its dispositive motion with respect to the Statute of Limitations, I will not grant leave to amend.

I will let my order stand and summarily dismiss the Complaint under 2—615 and 2—619 as well so that you may appeal both segments of the order.

MR. DeMAY [attorney for the State]: For the record, I would like to make a motion for leave to amend.

THE COURT: The motion will be denied.

MR. NORD [attorney for defendant Moore]: I was going to—The State requested the opportunity or requested that it appear on the record at this time how it would amend the Complaint to improve its position on the Statute of Limitations issue. If it is going to make a motion to amend the Complaint for purposes of perfecting its Appeal we would ask that the Court require it as part of that motion to advise the Court and the defendants of the nature of the amendment which it would make at this time, so that we don't go up to the Appellate Court leaving open what hypothetical amendments they might seek to make.

We think that should be part of the record now, so if the case is going to—if the case were to be reinstated it would be reinstated only on the particular facts, the amendments which the State has asked us now to be allowed to make.

MR. DeMAY: I am not sure I follow.

THE COURT: I think it is simply asking to assume that if I permitted the State to file amended complaints based upon the reasons I

have enunciated for my rulings, the State would, in its amended complaint make some allegations indicating how the Metropolitan Sanitary District was in fact damaged and how the public was adversely affected by the execution of the scheme and that they would in fact allege that Mr. Middleton, since the allegation did not appear to be verified, because Mr. Middleton acted within the scope of his employment and was an authority to bind Healy, is that not correct:

MR. DeMAY: That is correct.

MR. FOX [attorney for defendant S.A. Healy Co.]: Are there any other allegations the State would make?

MR. DeMAY: We have indicated—those are the only allegations we have to make to cure the defects found in addition to the Statute of Limitations, that were noted, will be made.

THE COURT: And I think for the purpose of expediting the disposition of this case my ruling would stand to deny your motion to amend, so you can go up on the base [*sic*] of that ruling.

MR. NORD: Thank you.

THE COURT: Prepare an Order on which all agree.