WILLIAM BOWE *et al.*, Indiv. and as Parents and Next Friends of Andrew
Bowe, a Minor, Plaintiffs-Appellants., v. ABBOTT LABORATORIES, INC.,
*et al.*, Defendants-Appellees.

First District (3rd Division) No. 1—91—1174

Opinion filed December 16, 1992.

Jeffrey M. Goldberg and James M. Geraghty, both of Jeffrey M. Goldberg & Associates, Ltd., of Chicago, and David W. Andich, of Rock Island, for appellants.

Lord, Bissell & Brook, of Chicago (Hugh L. Moore, Hugh C. Griffin, and Margaret S. Hickey, of counsel), for appellee Abbott Laboratories.

Bowles, Keating, Epsteen, Hering & Lowe, Chartered, of Chicago (Robert Epsteen, of counsel), for appellees E.R. Squibb & Sons, Inc., Olin Corp., and Olin Mathieson Chemical Corp.

Wildman, Harrold, Allen & Dixon, of Chicago (Richard C. Bartelt and Richard C. Palmer, of counsel), and Shook, Hardy & Bacon, of Kansas City, Missouri (Stephen E. Scheve and James J. Stubblefield, of counsel), for appellee Eli Lilly & Company.

Wildman, Harrold, Allen & Dixon, of Chicago (Richard C. Bartelt and Richard C. Palmer, of counsel), for appellees American Home Products Corporation, Ayerst Laboratories, Inc., Ayerst Laboratories, Inc., Division of American Home Products Corporation, Ayerst, McKenna & Harrison, Ltd., Ives Laboratories, Inc., and Ives Laboratories, Inc., Division of American Home Products Corporation.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Michael A. Pollard, and Mark L. Karasik, of counsel), for appellees Columbus Pharmacal Company, Philips Roxane, Inc., and Philips Roxane Laboratories, Inc.

Sidley & Austin, of Chicago (Michael W. Davis, Barbara M. DeCoster, and Michael J. Suffern, of counsel), for appellees The Upjohn Company, Armour Pharmaceutical Company, Armour Laboratories, Inc., a division of Armour Pharmaceutical Company, and Armour Laboratories.

Garretson & Santora, Ltd., of Chicago (Ian J. Lochridge, of counsel), for appellees Breon Laboratories, Winthrop Laboratories, Inc., and Sterling Drug Company.

Mayer, Brown & Platt, of Chicago (Jennifer T. Ansbro, of counsel), for appellee CPC International, Inc.

Johnson & Bell, Ltd., of Chicago (Thomas H. Fegan and Robert L. Nora, of counsel), for appellee Merck, Sharp & Dohme, Division of Merck & Company.

Brinton & Fedota, of Chicago (Mark C. Fedota and Brian C. Rocca, of counsel), for appellee Schieffelin & Company.

Pretzel & Stouffer, Chartered, of Chicago, for appellee Burroughs Wellcome Company.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

Plaintiffs, William Bowe and Catherine Bowe, individually and as parents and next friends of Andrew Bowe, a minor, appeal the circuit court orders which dismissed their complaint with prejudice, denied their motion to file a first amended complaint, and denied their motion to reconsider these orders.

For the reasons which follow, we find that the trial court abused its discretion in denying plaintiffs an opportunity to amend their complaint.

Plaintiffs seek relief for injuries allegedly sustained as a result of exposure to diethylstilbestrol (DES). They filed their complaint against numerous (151) DES manufacturers and distributors, and set forth their claim as a negligence action under the theory of market share liability. After the Illinois Supreme Court rejected market share liability as a proper basis for identifying the tortfeasor in *Smith v. Eli Lilly & Co.*

(1990), 137 Ill. 2d 222, 560 N.E.2d 324, plaintiffs attempted to file an amended complaint under the theory of alternative liability.

■ A fundamental element in a negligence or strict liability action is the burden placed upon the plaintiff to identify the defendant who caused the alleged harm or injury. The identification element of causation serves to assign blame to culpable parties and to limit the scope of potential liability. *Smith*, 137 Ill. 2d at 232-33.

■ The reoccurring problem in DES cases has been the inability of the plaintiffs to identify the particular DES manufacturer which produced the drug which caused their injuries to establish the causation-in-fact requirement in tort. The identification problem is exacerbated by the extended passage of time since the ingestion of the injury-producing DES, the unavailability of pertinent records, and the disappearance of DES-producing companies due to mergers, acquisitions, dissolution, and all the other reasons for going out of business. Consequently, courts throughout the country created certain exceptions to allow a plaintiff to shift to a defendant or a group of defendants the burden of proof or the burden of persuasion on this issue. The theories of market share liability and alternative liability are two exceptions advanced to overcome the difficulty, if not impossibility, of tracing and identifying the specific manufacturer of the injury-producing DES.

In essence, the theory of market share imposes liability on manufacturers which may have produced or marketed DES and apportions damages in some manner consistent with the manufacturer's share of the market. The four States which have adopted some version of the market share liability theory (California, New York, Washington, and Wisconsin) do not agree on its application or the remedy.[1] *Smith*, 137 Ill. 2d at 236-46.

---

[1]Under the theory established by the California Supreme Court in *Sindell v. Abbott Laboratories* (1980), 26 Cal. 3d 588, 607 P.2d 924, 163 Cal. Rptr. 132, the plaintiff must first join as defendants the manufacturers of a "substantial share" of the DES which her mother may have taken and prove a *prima facie* case on every element except identification of the direct tortfeasor. The burden of proof then shifts to defendants to demonstrate that they could not have manufactured the DES that caused the plaintiff's injuries. Upon failure to meet this burden, the court holds each defendant liable for the proportion of the judgment represented by its share of that market. Liability under the *Sindell* rule is only several rather than joint and several. (*Brown v. Superior Court* (1988), 44 Cal. 3d 1049, 751 P.2d 470, 245 Cal. Rptr. 412.) The Washington Supreme Court in *Martin v. Abbott Laboratories* (1984), 102 Wash. 2d 581, 689 P.2d 368, adopted the "market share alternate liability" theory, which allows the plaintiff to bring suit against only one defendant. A company or

The theory of alternative liability applies where two or more defendants act tortiously toward a plaintiff who, through no fault of her own, cannot identify which one of the joined defendants caused the injury. The burden of proof shifts to each defendant to prove his innocence. *Smith*, 137 Ill. 2d at 235.

The *Smith* court noted three distinctions between the theories of market share liability and alternative liability. First, the theories vary with regard to the defendants who must be joined. While alternative liability requires all parties who could have been the cause of the plaintiff's injuries to be joined as defendants, the various market share theories require the plaintiff to name as defendants either a substantial share of those in the market or only one manufacturer. Second, the policies underlying the burden shifting differ. In alternative liability, the burden shifting is considered equitable because the defendants are generally in a better position than the plaintiff to determine who caused the harm. Market share liability, on the other hand, shifts the burden to the defendants to prove their innocence without regard to who, if anyone, is in the better position to identify the culpable party. Third, the relationship between liability and culpability may differ. In alternative liability, each defendant was at least negligent toward the plaintiff, but with market share liability, some defendants are forced to bear part or all of the responsibility for the injury even though they may be innocent of wrongdoing towards the particular plaintiff. *Smith*, 137 Ill. 2d at 257-58.

On June 14, 1990, plaintiffs filed their initial complaint stating that the mother of plaintiff Catherine Bowe consumed DES while

---

companies unable to exculpate themselves become members of the plaintiff's DES market. Defendants are presumed and held liable on a *pro rata* basis unless and until they can prove their actual market share. The Wisconsin Supreme Court formulated the "risk contribution theory" in *Collins v. Eli Lilly Co.* (1984), 116 Wis. 2d 166, 342 N.W.2d 37, in which the plaintiff need only sue one drug company whether or not it constituted a substantial share of the market. The plaintiff must prove a *prima facie* case and then the burden again shifts to the defendant to prove by a preponderance of the evidence that it did not produce or market DES during the relevant time period or in the relevant geographical market. If only one company is sued and it cannot exculpate itself, that sole defendant is liable for all the damages. Where multiple defendants are involved, damages are determined according to the jury's assignment of liability under Wisconsin's comparative negligence statute. New York developed a form of market share liability utilizing a national market in *Hymowitz v. Eli Lilly & Co.* (1989), 73 N.Y.2d 487, 539 N.E.2d 1069, 541 N.Y.S.2d 941, where a defendant can exculpate itself only through proof that it did not participate in the marketing of DES for pregnancy use. Liability under the New York theory is several only and is not to be inflated if all the manufacturers are not joined.

pregnant with Catherine Bowe and as a result of Catherine's exposure to DES *in utero*, she developed an incompetent cervix. The son of Catherine Bowe, plaintiff Andrew Bowe, was born 14 weeks premature and suffered brain damage. The complaint alleges that the consumption of DES by Catherine's mother caused Catherine to develop an incompetent cervix which, in turn, resulted in the premature birth of and brain damage to Andrew Bowe. The complaint sought damages for Catherine Bowe as a DES daughter and for Andrew Bowe as a DES grandchild.

On July 3, 1990, the Illinois Supreme Court rejected the application of market share liability in a DES case and reversed the appellate court opinion which had held otherwise. (*Smith v. Eli Lilly & Co.* (1988), 173 Ill. App. 3d 1, 527 N.E.2d 333, *rev'd* (1990), 137 Ill. 2d 222, 560 N.E.2d 324.) The plaintiffs in *Smith* moved for a rehearing.

While the petition for rehearing was pending in *Smith*, defendants in the present case filed various motions to dismiss plaintiffs' complaint and for judgment on the pleadings on the grounds that the complaint failed to state a cause of action.

By agreed order dated September 20, 1990, the trial court continued all motions until the status of the pending petition for rehearing in the *Smith* case was determined.

On October 1, 1990, the Illinois Supreme Court denied the petition for a rehearing in the *Smith* case and issued a modified opinion which held fast to its original decision.

On November 5, 1990, the trial court in the present case entered an order to consolidate all the motions to dismiss and for judgment on the pleadings, set a briefing schedule, and continued the matter until December 3, 1990, for status.

On December 3, 1990, following a hearing, the trial court entered an order which (1) granted, without prejudice, certain defendants' motions to dismiss; (2) granted plaintiffs leave to file an amended complaint on or before January 7, 1991; (3) continued the case to February 8, 1991; and (4) provided that all defendants not named in the amended complaint would be dismissed with prejudice on February 8, 1991.

Plaintiffs did not file an amended complaint by January 7, 1991, but at the February 8, 1991, hearing, attempted to file their first amended complaint based on the alternative liability theory. The trial court refused to allow the first amended complaint to be filed and in considering whether to grant such leave heard argument as to the impact of *Smith* on the alternative liability theory. Neither the court nor defense counsel had even had an opportunity to examine the first

amended complaint. Plaintiffs asked only that they be allowed to file their first amended complaint, a briefing schedule be established, and, in due time, a hearing. The trial court concluded that the *Smith* court had rejected the alternative liability theory and that the truncated hearing would be an efficient manner in which to dispose of plaintiffs' motion for leave to file their first amended complaint and the defendants' motions to dismiss that would have assuredly been filed.

Plaintiffs then filed a motion for reconsideration of the February 8, 1991, order which the trial court denied following a hearing on March 18, 1991.

Plaintiffs argue on appeal that (1) the trial court's dismissal of their complaint with prejudice was premature because the basic issue in this case is to identify the drug manufacturer which caused plaintiffs' injuries and plaintiffs have not yet had the opportunity to develop this information through discovery; (2) plaintiffs satisfied each element necessary, as enumerated in *Loyola Academy v. S & S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 586 N.E.2d 1211, to establish that the trial court abused its discretion in denying plaintiffs leave to file their first amended complaint; and (3) the law regarding the theory of alternative liability has not been resolved in Illinois (*Wysocki v. Reed* (1991), 222 Ill. App. 3d 268, 583 N.E.2d 1139) and has been accepted in Michigan (*Abel v. Eli Lilly & Co.* (1984), 418 Mich. 311, 343 N.W.2d 164).

In response, defendants contend that the trial court's decisions were proper because (1) dismissal with prejudice was timely since plaintiffs failed to seek any discovery in the trial court other than the service of a subpoena *duces tecum* on the pharmacy that allegedly dispensed DES to Andrew Bowe's grandmother and plaintiffs did not request a continuance for the purpose of conducting discovery; (2) plaintiffs' original complaint alleging market share liability is fatally deficient under the *Smith* opinion; and (3) the alternative liability theory proposed by plaintiffs was rejected in the appellate court decision of *Smith* and thereafter foreclosed by the supreme court opinion in *Smith*.

■ There is a strong policy which favors an adequate and appropriate hearing of a litigant's claim on the merits. (*Meeker v. Payne* (1981), 101 Ill. App. 3d 723, 727, 428 N.E.2d 614 (the trial court abused its discretion in dismissing plaintiff's complaint with prejudice and denying the plaintiff an opportunity to amend).) In furtherance of this policy, it is well established that a cause of action should not be dismissed with prejudice unless it clearly appears that no set of facts can be proved under the pleading which would entitle the plaintiff to

relief. *People ex rel. Hartigan v. Moore* (1986), 143 Ill. App. 3d 410, 413, 493 N.E.2d 85.

If, by amendment, a plaintiff can state a cause of action, a case should not be dismissed with prejudice on the pleadings. (*Rudnick v. Vokaty* (1980), 84 Ill. App. 3d 1003, 406 N.E.2d 105.) In *Rudnick*, the appellate court acknowledged that the plaintiff's original complaint was insufficient and that the trial court properly granted the defendant's motion to dismiss. However, the *Rudnick* court further held that the trial court's decision to dismiss the plaintiff's complaint with prejudice was premature and that the plaintiff should be given the opportunity to amend his complaint in an attempt to state a valid cause of action. *Rudnick*, 84 Ill. App. 3d at 1007-08.

In the case at bar, the trial court granted plaintiffs leave to file an additional complaint by January 7. We cannot imagine what interests intervened to deny plaintiffs that right notwithstanding their 30-day tardiness. Amendment of the complaint generally rests within the sound discretion of the trial court. *Ruklick v. Julius Schmid, Inc.* (1988), 169 Ill. App. 3d 1098, 1111, 523 N.E.2d 1208.

█ The Illinois Supreme Court established four factors to consider in determining whether the trial court abused that discretion: (1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified. (*Loyola Academy*, 146 Ill. 2d at 273.) In the present case, the dispute concerns the first enumerated factor, *i.e.*, whether plaintiffs' amended complaint predicated on alternative liability sufficiently cures the defect of previously relying on the rejected theory of market share liability.

█ Although the court may consider the efficacy of a claim in deciding whether or not to allow amendment (*Marczak v. Drexel National Bank* (1989), 186 Ill. App. 3d 640, 643, 542 N.E.2d 787), any doubt should be resolved in favor of the amendment (*Deming v. Montgomery* (1989), 180 Ill. App. 3d 527, 533, 536 N.E.2d 150 (the circuit court abused its discretion when it denied plaintiff's motion to amend his pleadings to conform to the proof adduced at trial)).

Amendment should be liberally allowed to permit parties to fully present their causes of action. *Morris v. City of Chicago* (1985), 130 Ill. App. 3d 740, 746, 474 N.E.2d 1274 (the trial court improperly denied the plaintiff leave to amend where the trial court directed a verdict for defendant before the plaintiff had finished putting on his case); see also *Marczak*, 186 Ill. App. 3d at 643 ("[a] trial court's

power to allow amendments should be freely exercised in order that litigants may fully present their causes of action").

■■ In the present case, the trial court, in its December 1990 order, granted plaintiffs leave to file an amended complaint since *Smith* had rejected the theory of market share liability in a DES case. At the next scheduled hearing on February 8, 1991, plaintiffs attempted to file their amended complaint predicated on alternative liability, but the trial court clearly believed that *Smith* had barred an action based on the doctrine of alternative liability. The question for this court then becomes whether the theory of alternative liability has been foreclosed so as to render plaintiffs' proposed amended complaint incapable of stating a cause of action.

The *Smith* opinion expressly states that "we [the supreme court] have before us only the narrow legal issue of whether to adopt market share liability in negligence and strict liability actions filed by a DES daughter." (*Smith*, 137 Ill. 2d at 236.) Notwithstanding this statement, the court extensively discussed other theories which are exceptions to the traditional causation requirement in tort actions and observed that the alternative liability theory has been found inapplicable to DES cases by every court which has addressed the issue. (*Smith*, 137 Ill. 2d at 257.) However, the court then contrasted the theories of market share liability and alternative liability. *Smith*, 137 Ill. 2d at 257-58.

In a subsequent case, the First District Appellate Court found that the *Smith* decision does not provide any "clear expression of the views of the majority on the merits of alternative liability other than the fact that it lacks some of the flaws of market share liability." (*Wysocki*, 222 Ill. App. 3d at 274.) In addition, the *Wysocki* court interpreted "the remarks of the dissenting justices [in *Smith*] to be expressions of approval of alternative liability." (*Wysocki*, 222 Ill. App. 3d at 274.) The *Wysocki* court accepted the doctrine of alternative liability and found that it was applicable to the facts of its case where the potential products liability claim would be against two drug manufacturers.

In *Wysocki*, the decedent died while in a hospital from a reaction to the ingestion of a drug named heparin. The hospital purchased heparin from two manufacturers, Upjohn Company and Wyeth Laboratories. The plaintiff in *Wysocki* filed a products liability suit against the two drug manufacturers which the trial court dismissed with prejudice! On appeal, however, the *Wysocki* court adopted the alternative liability doctrine, expressly reserving the question of whether the rule

should be applicable to more than two tortfeasors. *Wysocki*, 222 Ill. App. 3d at 279.

Even if, at first reading, *Smith* appears to lay to rest the theory of alternative liability, the *Wysocki* court returns vitality to it. Alternative liability is a viable theory in Illinois under the holding of *Wysocki* and thus plaintiffs in the present case should have been allowed to address their theory on the merits.

*Wysocki* involved two defendants and the court predicated its decision on the rule of alternative liability established in section 433B(3) of the Restatement (Second) of Torts, which provides for the inclusion of "two or more actors" where their conduct is tortious (Restatement (Second) of Torts §433B(3) (1965)). *Wysocki*, 222 Ill. App. 3d at 279 ("we hold that the Restatement rule of alternative liability is applicable to the facts alleged in this complaint").

Acknowledging that problems might arise in claims involving more than two tortfeasors, the *Wysocki* court restricted the application of alternative liability to cases where all of the possible defendants are before the court (*Wysocki*, 222 Ill. App. 3d at 276) and reserved the question of its applicability to more than two tortfeasors (*Wysocki*, 222 Ill. App. 3d at 279).

In the present case, 151 defendants are named in plaintiffs' amended complaint. With the commencement or completion of discovery, the number of defendants could conceivably be substantially reduced. Our holding does not decide whether or not plaintiffs' complaint should ultimately be allowed to stand. Instead, we limit our finding to the issue of whether plaintiffs should have been allowed leave to amend their complaint after the theory of market share liability originally pled was rejected by the supreme court in *Smith*.

Since the theory of alternative liability has not yet been definitively resolved in Illinois, plaintiffs should have been allowed to file their first amended complaint and have a motion attacking its sufficiency heard in due course. Accordingly, we reverse the trial court's orders dismissing plaintiffs' complaint with prejudice and denying plaintiffs leave to amend, and remand this matter for proceedings consistent with this opinion.

Reversed and remanded.

TULLY and CERDA, JJ., concur.