(No. 79943.—

STEVEN CRAMER, Appellee, v. INSURANCE EXCHANGE AGENCY *et al.* (Economy Fire & Casualty Company *et al.*, Appellants).

*Opinion filed October 24, 1996.—Rehearing denied February 3, 1997.*

FREEMAN, J., specially concurring.
HARRISON, J., joined by BILANDIC, C.J., dissenting.

Heyl, Royster, Voelker & Allen, of Peoria (Karen L. Kendall, Craig L. Unrath and David A. Perkins, of counsel), for appellants.

Steven Cramer, of Abington, appellee *pro se*.

JUSTICE NICKELS delivered the opinion of the court:

We consider here whether a plaintiff may pursue a common law fraud action arising from the purported cancellation of an insurance policy. In a complaint filed in the circuit court of Knox County, plaintiff, Steven Cramer, alleged that defendants, Economy Fire and Ca-

sualty Company and its claims examiner, engaged in fraud and deceptive practice with regard to the cancellation of his policy. Defendants filed a motion for summary judgment claiming that the suit was untimely, based on a one-year limitation provision contained in the policy. The circuit court construed the action as a common law fraud action and denied the motion for summary judgment.

The circuit court certified two questions for interlocutory appeal: (1) whether section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 1994)) preempts a common law fraud cause of action against an insurance company for its alleged unreasonable conduct in denying an insurance claim; and (2) whether a limitation provision of an insurance policy which states that "[n]o action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss" is applicable to a common law fraud cause of action against an insurance company for its allegedly unreasonable conduct in denying an insurance claim. The appellate court answered "no" to both questions and affirmed denial of summary judgment. 275 Ill. App. 3d 68. We granted defendants' petition for leave to appeal. 155 Ill. 2d R. 315. We reverse.

## BACKGROUND

In 1991, plaintiff purchased a homeowner's insurance policy from the insurer and paid the premium. The policy covered plaintiff's personal property and was to run for one year from October 25, 1991, to October 25, 1992. Plaintiff's residence was later burglarized. The underlying dispute arises from the insurer's attempted cancellation of the policy. The insurer argues that it cancelled the policy before the burglary occurred. Plaintiff contends that he never received a notice of cancellation and that any purported cancellation is fraudulent.

Initially, we note that plaintiff raised allegations against two sets of defendants in the complaint: (1) the Insurance Exchange Agency and one of its employees, and (2) Economy Fire and Casualty Company and a claims examiner (collectively, insurer). Plaintiff sought $6,909 from the Insurance Exchange Agency and its employee. This $6,909 amount represents the total amount of plaintiff's loss. Plaintiff sought an additional $6,909 in damages from the insurer, which he labelled "double indemnity" damages.

With respect to the first set of defendants, we note that the Insurance Exchange Agency is an independent insurance agency and was initially involved with plaintiff's application for insurance. In the complaint, plaintiff alleged that the Agency and its employee engaged in negligence in connection with the issuance of his policy. Plaintiff alleged that they did not forward documentation that was needed to complete the application. These defendants, however, did not participate in the motion for summary judgment, which is the subject of this appeal. Because this appeal involves only the insurer, we do not discuss the allegations against these two defendants further.

With respect to the second set of defendants, plaintiff alleged that he never received a notice of cancellation from the insurer and was never informed that the policy was cancelled. Plaintiff claims that the insurer did not send a notice of cancellation at all. Plaintiff claims that the insurer is using this purported cancellation "with the expressed and intentional purpose to defraud Plaintiff out of his coverage which he was legally entitled to."

According to the insurer, on December 2, 1991, a notice of cancellation was sent to plaintiff. The policy was being cancelled because the insurer had been unable to obtain certain information from plaintiff. According to

the insurer, the cancellation went into effect on January 6, 1992.

Three days later, on January 9, 1992, plaintiff's home was burglarized. Plaintiff sent his proof of loss statement to the insurer in May, showing a loss of $6,909. On May 22, 1992, the insurer denied the claim because the burglary had occurred three days after the policy was cancelled. Plaintiff's premium was refunded in June 1992. In October 1993, more than a year later, plaintiff filed this suit *pro se*.

The insurer moved for summary judgment. The insurer based its motion for summary judgment solely on the one-year suit limitation clause included in the insurance policy. This clause requires that any action on the policy be brought within one year after the date of loss. Plaintiff filed his action more than a year after the burglary and more than a year after his claim under the policy was denied. Thus, according to the insurer, an action alleging breach of the policy is untimely.

At the hearing on the insurer's motion for summary judgment, the circuit court construed the complaint as stating a cause of action for fraud, rather than for breach of the policy. The court then found that the suit limitation clause contained in the policy applied only to actions on the policy and did not apply to common law fraud actions. The circuit court, however, gave defendants time to provide additional authority.

The insurer filed a supplement to the motion for summary judgment. It argued that, to the extent this action is a breach of contract action, it is precluded by the one-year limitation period provided in the policy. The insurer further argued that, to the extent the action is a tort action, it was barred by the preemptive effect of section 155 of the Insurance Code. Essentially, section 155 provides a remedy to policyholders whose insurers engage in unreasonable and vexatious conduct

when delaying payment or denying a claim. The circuit court rejected the insurer's arguments and denied summary judgment.

The appellate court affirmed. First, the appellate court considered the effect of section 155 on a common law fraud action. It held that section 155 does not preempt a common law action for fraud against an insurer for its unreasonable conduct in denying a claim. In reaching its decision, the court relied principally on decisions finding that section 155 does not preempt the tort of bad faith and unfair dealing.

Second, the appellate court considered whether the limitation provision in the policy barred a tort action relating to the policy. It found that a common law fraud action involving policy proceeds is collateral to an action for breach of contract. It held that the suit limitation provision in the policy applied only to actions on the policy and not to plaintiff's action in fraud. Accordingly, the appellate court affirmed the circuit court's denial of summary judgment, agreeing that plaintiff should be allowed to pursue his action.

## ANALYSIS

The denial of summary judgment is an interlocutory order that is generally not appealable. Supreme Court Rule 308(a) allows appeal of an interlocutory order to the appellate court where "the order involves a question of law as to which there is substantial ground for difference of opinion and *** an immediate appeal from the order may materially advance the ultimate termination of the litigation." 155 Ill. 2d R. 308. The appellate court's decision may then be appealed to this court under Rule 315. 155 Ill. 2d R. 315.

The insurer argues that plaintiff has alleged nothing more than unreasonable and vexatious conduct in the complaint. The statute provides a remedy for such conduct. The insurer argues that the statute, in conjunc-

tion with a breach of contract action, provides the remedy for this conduct, not an independent tort action. According to the insurer, plaintiff's action is essentially a breach of contract action, which is barred by the limitation clause contained in the policy.

Much of the analysis of the circuit and appellate courts relies on cases involving the tort of bad faith and unfair dealing. Although the complaint is inartfully drafted, it could be construed as alleging bad faith and unfair dealing. Here, we examine how the analysis employed by the lower courts, including their reliance on cases involving the tort of bad faith, applies to the allegations raised in the instant complaint.

In part I, we examine the development of section 155. In part II, we consider the interaction of the statute with tort law. We hold that section 155 does not preempt a separate and independent tort action involving insurer misconduct. We also hold, however, that the tort of bad faith is not a separate and independent tort action that is recognized in Illinois. In part III, we consider the allegations raised in plaintiff's complaint. We find that the allegations in the complaint seek to state a cause of action for breach of the policy, which is barred by the suit limitation provision. Accordingly, the insurer is entitled to summary judgment.

I

Resolution of this appeal requires an examination of the statute. Section 155 provides:

"Attorney fees. (1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $25,000;

(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action." 215 ILCS 5/155 (West 1994).

The statute provides an extracontractual remedy to policyholders whose insurer's refusal to recognize liability and pay a claim under a policy is vexatious and unreasonable. *Kush v. American States Insurance Co.*, 853 F.2d 1380, 1385 (7th Cir. 1988); *UNR Industries, Inc. v. Continental Insurance Co.*, 607 F. Supp. 855, 863 (N.D. Ill. 1984). Ordinarily, a policyholder may bring a breach of contract action to recover the proceeds due under the policy. Pursuant to the statute, a plaintiff may also recover reasonable attorney fees and other costs, as well as an additional sum that constitutes a penalty.

Section 155 was enacted in 1937, as part of a major revision of the Illinois Insurance Code. In its original version, known as section 767, it allowed an award of attorney fees, up to a maximum of $500, if an insurer's refusal to pay a claim was "vexatious and without reasonable cause." Ill. Rev. Stat. 1937, ch. 73, par. 767. Under the statute, a plaintiff could seek limited attorney fees, in addition to an action to recover the policy proceeds. Before the statute was enacted, a plaintiff could not seek an award of attorney fees, regardless of the bad faith of the insurer. The purpose of the statute was to provide a remedy for insurer misconduct:

"Although some companies are very liberal in the payment of claims, this is by no means true of all. In the absence of any allowance of attorneys' fees, the holder of a small policy may see practically his whole claim wiped out by expenses if the company compels him to resort to court action, although the refusal to pay the claim is based

upon the flimsiest sort of a pretext. The strict limit on the amount allowable makes the section significant only for small claims. It should prove wholesome in its effect upon companies unreasonably withholding payment of such claims. It is doubtful if there are many judges who would allow such fees when the defense was bona fide although deemed inadequate." H. Havinghurst, *Some Aspects of the Illinois Insurance Code*, 32 Ill. L. Rev. 391, 405 (1937).

Since 1937, the statute has been amended several times. The cap on attorney fees was raised to $1,000 in 1967. Ill. Rev. Stat. 1967, ch. 73, par. 767. In 1977, the legislature amended the statute again, this time removing the cap on attorney fees entirely *and* providing for the award of a penalty against the insurer. Ill. Rev. Stat. 1977, ch. 73, par. 767. This award was limited to a maximum of $5,000. In 1986, the statute was amended to its current version. The maximum allowable penalty under the statute was raised to $25,000.

Before the statute was enacted, a policyholder's only recourse was to seek a breach of contract action to receive the policy proceeds. Attorney fees and punitive damages are generally not available in breach of contract actions. Section 155 created a limited statutory exception to this rule. It was intended to make suits by policyholders economically feasible and to punish insurers. *UNR Industries, Inc.*, 607 F. Supp. at 866. By enacting and amending the statute, the legislature has expanded plaintiff's relief to include reasonable attorney fees, costs, and a limited penalty, in addition to a breach of contract action to recover the amount due under the policy. The legislature has steadily amended the statute to allow an increasingly greater recovery for unreasonable and vexatious insurer misconduct.

Application of the statute was relatively straightforward until *Ledingham v. Blue Cross Plan for Hospital Care of Hospital Service Corp.*, 29 Ill. App. 3d 339 (1975), *rev'd on other grounds*, 64 Ill. 2d 338 (1976). In *Leding-*

*ham*, the appellate court recognized a tort action for bad faith and unfair dealing in connection with the denial of a claim by an insurer. This was the first time the tort of bad faith and unfair dealing was recognized in Illinois in this context. In recognizing the existence of this tort, the *Ledingham* court did not consider the impact, if any, of section 155 of the Insurance Code on this new tort of bad faith.

The *Ledingham* court based its ruling on the implied covenant of good faith and fair dealing that exists between contracting parties. The appellate court first stated that a defendant may engage in conduct that both breaches a contract and also constitutes a separate and independent tort. *Ledingham*, 29 Ill. App. 3d at 344. The appellate court then determined that breach of the contractual covenant of good faith and fair dealing would also constitute an independent tort in connection with an insurer's denial of claims. *Ledingham*, 29 Ill. App. 3d at 350. Thus, *Ledingham* elevated this implied contractual covenant to the status of an independent tort.

After *Ledingham*, appellate and federal panels have extensively discussed the interaction between the statute and the tort of bad faith. Although many of these courts have framed the issue as one of preemption, the question of preemption is also intertwined with the question of whether Illinois recognizes the tort of bad faith. There has been considerable confusion in the courts concerning the interaction of the statute and tort law.

Some courts have rejected *Ledingham* and the tort of bad faith entirely. See, *e.g.*, *Buais v. Safeway Insurance Co.*, 275 Ill. App. 3d 587 (1995); *Perfection Carpet, Inc. v. State Farm Fire & Casualty Co.*, 259 Ill. App. 3d 21 (1993); *Tobolt v. Allstate Insurance Co.*, 75 Ill. App. 3d 57 (1979); *Debolt v. Mutual of Omaha*, 56 Ill. App. 3d 111 (1978); *Ellis v. Metropolitan Property & Liability In-*

*surance Co.*, 600 F. Supp. 1 (S.D. Ill. 1982); *Strader v. Union Hall, Inc.*, 486 F. Supp. 159 (N.D. Ill. 1980). Others have assumed the existence of the tort of bad faith and have concluded that the statute preempts only a claim for punitive damages in connection with the tort. See, *e.g., Emerson v. American Bankers Insurance Co.*, 223 Ill. App. 3d 929 (1992); *Calcagno v. Personalcare Health Management, Inc.*, 207 Ill. App. 3d 493 (1991); *Hoffman v. Allstate Insurance Co.*, 85 Ill. App. 3d 631 (1980); *Kohlmeier v. Shelter Insurance Co.*, 170 Ill. App. 3d 643 (1988); *W.E. O'Neil Construction Co. v. National Union Fire Insurance Co.*, 721 F. Supp. 984 (N.D. Ill. 1989); *American Dental Ass'n v. Hartford Steam Boiler Inspection & Insurance Co.*, 625 F. Supp. 364 (N.D. Ill. 1985); *Scheinfeld v. American Family Mutual Insurance Co.*, 624 F. Supp. 698 (N.D. Ill. 1985); *UNR Industries, Inc.*, 607 F. Supp. 855. Still others have held that the statute does not preempt any tort action at all and that a plaintiff may pursue a tort action alleging bad faith and seek punitive damages. *Roberts v. Western-Southern Life Insurance Co.*, 568 F. Supp. 536 (N.D. Ill. 1983); *Kelly v. Stratton*, 552 F. Supp. 641 (N.D. Ill. 1982). Finally, several courts have held that the statute preempts a tort action, regardless of the specific legal theory asserted, if the complaint alleges nothing more than unreasonable and vexatious conduct. See, *e.g., Mazur v. Hunt*, 227 Ill. App. 3d 785 (1992); *Combs v. Insurance Co.*, 146 Ill. App. 3d 957 (1986); *Kush*, 853 F.2d 1380; *Zakarian v. Prudential Insurance Co. of America*, 652 F. Supp. 1126 (N.D. Ill. 1987); *Bageanis v. American Bankers Life Assurance Co.*, 783 F. Supp. 1141 (N.D. Ill. 1992); *York v. Globe Life & Accident Insurance Co.*, 734 F. Supp. 340 (C.D. Ill. 1990).

## II

As noted, the statute provides an extracontractual remedy for policyholders who have suffered unreason-

able and vexatious conduct by insurers with respect to a claim under the policy. It presupposes an action on the policy. As such, nothing in the statute addresses tortious conduct or tort liability in general. The statute simply provides an extracontractual remedy to an action on a policy.

As the *Ledingham* court correctly stated, a defendant may engage in conduct that both breaches a contract and constitutes a separate and independent tort. *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 187 (1978). The statute provides an extracontractual remedy for insurer misconduct that is vexatious and unreasonable. Well-established tort actions, such as common law fraud, require proof of different elements and remedy a different sort of harm than the statute does. These torts address insurer misconduct that is not merely vexatious and unreasonable. The statute was not intended to insulate an insurer from such tort actions.

Much of the confusion among the appellate and federal courts arises from the interaction of the statute and the tort of bad faith and unfair dealing. Unlike an action in fraud, a bad-faith action involves insurer misconduct that is similar to unreasonable and vexatious misconduct. This court, however, has never recognized such a tort. We therefore determine, in light of the statute, whether such a tort is recognized in Illinois.

In *Ledingham*, the appellate court derived the tort of good faith and fair dealing from contract law. This good-faith principle, however, is used only as a construction aid in determining the intent of contracting parties. See *Martindell v. Lake Shore National Bank*, 15 Ill. 2d 272, 286 (1958) ("Every contract implies good faith and fair dealing between the parties to it, and where an instrument is susceptible of two conflicting constructions, one which imputes bad faith to one of the parties

and the other does not, the latter construction should be adopted"). This principle ensures that parties do not try to take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or to do anything that will destroy the other party's right to receive the benefit of the contract. *Capital Options Investment, Inc. v. Goldberg Brothers Commodities, Inc.*, 958 F.2d 186, 189 (7th Cir. 1992); *Vincent v. Doebert*, 183 Ill. App. 3d 1081, 1090 (1989). This contractual covenant is not generally recognized as an independent source of duties giving rise to a cause of action in tort. *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992); *Martin v. Federal Life Insurance Co.*, 109 Ill. App. 3d 596, 605-07 (1982); *Anderson v. Burton Associates, Ltd.*, 218 Ill. App. 3d 261, 267 (1991).

The use of the contractual covenant of good faith and fair dealing to establish an independent tort arises from cases involving the "duty to settle." See *Ledingham*, 29 Ill. App. 3d at 345-50; see generally S. Ashley, Bad Faith Liability §§ 1:01 through 1:13, at 1-48 (1987). These cases generally involve a policyholder, a liability insurer, and a third party. The liability insurer has assumed the policyholder's defense under the policy and is negotiating a settlement with a third party. In the typical "duty to settle" case, the third party has sued the policyholder for an amount in excess of the policy limits but has offered to settle the claim against the policyholder for an amount equal to or less than those policy limits.

In this circumstance, the insurer may have an incentive to decline the settlement offer and proceed to trial. The insurer may believe that it can win a verdict in its favor. In contrast, the policyholder may prefer to settle within the policy limits and avoid the risk of trial. The insurer may ignore the policyholder's interest and

decline to settle. This court has recognized that the insurer has a duty to act in good faith in responding to settlement offers. *Krutsinger v. Illinois Casualty Co.*, 10 Ill. 2d 518, 527 (1957). When an insurer breaches this duty by refusing to settle, the insurer may be liable for the full amount of a judgment against the policyholder, regardless of policy limits. See *Mid-America Bank & Trust Co. v. Commercial Union Insurance Co.*, 224 Ill. App. 3d 1083, 1087 (1992); *Phelan v. State Farm Mutual Automobile Insurance Co.*, 114 Ill. App. 3d 96, 104 (1983); *Edwins v. General Casualty Co.*, 78 Ill. App. 3d 965, 968 (1979); *Scroggins v. Allstate Insurance Co.*, 74 Ill. App. 3d 1027, 1029 (1979).

The "duty to settle" arises because the policyholder has relinquished defense of the suit to the insurer. The policyholder depends upon the insurer to conduct the defense properly. In these cases, the policyholder has no contractual remedy because the policy does not specifically define the liability insurer's duty when responding to settlement offers. The duty was imposed to deal with the specific problem of claim settlement abuses by liability insurers where the policyholder has no contractual remedy. *Debolt*, 56 Ill. App. 3d at 115; see also *National Union Fire Insurance Co. v. Continental Illinois Corp.*, 673 F. Supp. 267, 270-72 (N.D. Ill. 1987) (distinguishing between "duty to settle" cases and section 155).

This reasoning, however, does not apply to first-party claims made directly by a policyholder against an insurer and which do not involve liability insurance. The policyholder does not need a new cause of action to protect him from insurer misconduct where an insurer refuses to pay. The policyholder has an explicit contractual remedy. He can sue for the proceeds due under the policy. The extent of this remedy is controlled by contract law. The fact that a policyholder cannot re-

cover as much as he could in tort arises from the fact that contract law imposes limitations on recovery. See S. Ashley, Bad Faith Liability §§ 2:01 through 2:08, at 55-73 (1987).

The legislature has recognized that the contractual remedy may not be sufficient and has provided for the award of an extracontractual remedy. The primary benefit of the tort theory developed in *Ledingham* is that it permits insured parties to collect an extracontractual award in what essentially are breach of contract actions, where attorney fees and punitive damages are usually unavailable. *Strader*, 486 F. Supp. at 162. The legislature, however, specifically enacted section 155 to deal with this lack of an extracontractual remedy. The remedy provided by section 155 allows an extracontractual award and specifically defines the limits of this award.

This court has previously declined to recognize a new common law tort where the legislature has passed a statutory scheme providing a limited remedy. See *Hall v. Gillins*, 13 Ill. 2d 26 (1958) (declining to recognize a new common law action for wrongful death where the legislature had created a limited wrongful death remedy by statute); *Cunningham v. Brown*, 22 Ill. 2d 23 (1961) (declining to recognize a new common law action for damages caused by the negligent sale of liquor where the legislature had created a limited statutory remedy by enacting the Dram Shop Act). Similarly, in conjunction with a breach of contract action, section 155 provides the remedy to policyholders for insurer misconduct that does not rise to the level of a well-established tort. In addition, the legislature has constantly amended the statute to allow greater recovery. We hesitate to recognize a new tort where the legislature has constantly acted to remedy a perceived evil in a certain area. See *Hall*, 13 Ill. 2d at 31-32 (noting that the

maximum recovery under the statute had steadily been increased); see also *Combs,* 146 Ill. App. 3d at 962-63.

To allow a bad-faith action would transform many breach of contract actions into independent tort actions. *Martin,* 109 Ill. App. 3d at 605-07. A duty of good faith and fair dealing would be tortiously violated whenever one party takes an action designed to deprive the other of the benefits of the agreement. A bad-faith action would encourage plaintiffs to sue in tort, and not breach of contract, to avoid suit limitation clauses and the cap on the statutory remedy. *Hall* and *Cunningham* indicate that "when the legislature has provided a remedy for a heretofore unremedied evil, the courts should not allow an end-run around the limits imposed by that statute by creating a common-law action that remedies the same basic evil." *UNR Industries, Inc.,* 607 F. Supp. at 864.

In summary, an insurer's conduct may give rise to both a breach of contract action and a separate and independent tort action. *Kelsay,* 74 Ill. 2d at 187. Mere allegations of bad faith or unreasonable and vexatious conduct, without more, however, do not constitute such a tort. Courts therefore should look beyond the legal theory asserted to the conduct forming the basis for the claim. *Kush,* 853 F.2d at 1385; *Zakarian,* 652 F. Supp. at 1136; *Combs,* 146 Ill. App. 3d at 963-64. In cases where a plaintiff actually alleges and proves the elements of a separate tort, a plaintiff may bring an independent tort action, such as common law fraud, for insurer misconduct.

## III

With these principles in mind, we consider the allegations in the complaint. The complaint is inartfully drafted and filled with conclusory language. We ignore this conclusory language and consider the alleged conduct to determine if plaintiff alleges anything more than bad faith. Plaintiff alleges that the insurer never

sent him a notice of cancellation. Plaintiff alleges that the insurer fabricated the notice of cancellation solely to deny his claim under the policy. Plaintiff seeks the proceeds due him under the policy.

In order to state a cause of action for common law fraud, the essential elements of fraud must be pleaded with specificity. See *Talbert v. Home Savings of America, F.A.*, 265 Ill. App. 3d 376, 382 (1994); *In re Marriage of Shaner*, 252 Ill. App. 3d 146, 157 (1993); *Trautman v. Knights of Columbus*, 121 Ill. App. 3d 911, 914 (1984). The elements that must be alleged include: "(1) a false statement of material fact; (2) the party making the statement knew or believed it to be untrue; (3) the party to whom the statement was made had a right to rely on the statement; (4) the party to whom the statement was made did rely on the statement; (5) the statement was made for the purpose of inducing the other party to act; and (6) the reliance by the person to whom the statement was made led to that person's injury." *Siegel v. Levy Organization Development Co.*, 153 Ill. 2d 534, 542-43 (1992).

Here, the complaint is barren of any allegations of reliance. Instead, plaintiff alleges that the insurer is lying after the fact to avoid paying his claim. Essentially, plaintiff alleges that the insurer is trying to deny him the benefits of the policy. See *Mazur*, 227 Ill. App. 3d 785 (allegations that the insurer refused in bad faith to pay for two items not included on a proof of loss form was not sufficient to allege fraud). Plaintiff did not allege that he acted in reliance on any statement by the insurer. See *Trautman*, 121 Ill. App. 3d 911 (allegations that the insurer forged an amendment to the policy and in bad faith deprived the plaintiff of insurance proceeds did not contain allegation of reliance on the amendment); *Kinney v. St. Paul Mercury Insurance Co.*, 120 Ill. App. 3d 294 (1983) (allegations that the insurer made an

estimate for repairs in bad faith in connection with a settlement offer did not contain allegation of reliance).

The insurer based its motion for summary judgment on the one-year limitation provision contained in the policy. Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with the affidavits, demonstrate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1994); *First of America Bank, Rockford, N.A. v. Netsch*, 166 Ill. 2d 165, 176 (1995). The review of a summary judgment ruling is an issue of law and our review is therefore *de novo. Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 333 (1996).

At best, plaintiff alleges a breach of contract action. The policy provides that a suit on the policy must be brought within one year of loss. The Insurance Code provides that the limitation period is tolled by the number of days between the date when a proof of loss is submitted and the date when the claim is denied. 215 ILCS 5/143.1 (West 1994). Compliance with the suit limitation provision of the policy is a condition precedent to recovery under a policy. See *Schoonover v. American Family Insurance Co.*, 214 Ill. App. 3d 33, 44 (1991). The loss occurred on January 9, 1992, and plaintiff's claim was denied on May 22, 1992. Plaintiff's suit was filed on October 19, 1993. Even assuming the limitation provision was tolled until plaintiff's claim was denied by the insurer on May 22, the suit, which was filed more than 16 months later, was untimely. The fatal flaw with plaintiff's action is simply that he waited too long to file it.

In light of the foregoing analysis, we need not further address the second certified question, concerning whether a suit limitation provision applies to common law fraud actions.

## CONCLUSION

Section 155 does not preempt a claim of insurer misconduct based on a separate and independent tort. Mere allegations of bad faith or unreasonable and vexatious conduct, however, are not sufficient to constitute a separate and independent tort. Plaintiff's breach of contract action is untimely under the policy. Accordingly, we reverse the judgments of the appellate and circuit courts and remand the cause to the circuit court of Knox County with directions to enter summary judgment in favor of the insurer.

> *Appellate court judgment reversed;*
> *circuit court judgment reversed;*
> *cause remanded with directions.*

JUSTICE FREEMAN, specially concurring:

I agree with the majority that summary judgment was proper based on the fact that the plaintiff's suit was barred by the insurance policy's limitations provision. I cannot agree with the majority's reasoning regarding the preemptive scope of section 155, or the present status in Illinois of the tort of insurer bad faith and unfair dealing. Based on my examination of section 155, and a host of state and federal decisions, I am convinced that the tort of bad faith and unfair dealing is long established in Illinois and should remain so, section 155 notwithstanding.

Moreover, I believe it is unfortunate that the majority has seen fit to render a decision in this area, a decision arguably adverse to the interests of small policyholders, without the benefit of substantial briefs from that quarter. I note that the plaintiff's *pro se* appellate brief consists of a single letter to this court merely arguing that his claim for fraud be allowed so as to deter insurers from engaging in deceptive and vexatious conduct in settling claims.

Ironically, that misfortune only highlights why a

tort cause of action for insurer bad faith is necessary even in the realm of first-party coverage claims. Insureds are often at a bargaining disadvantage with their insurers. Thus, insurers have been found to fail to adequately investigate claims or deny claims without adequate supporting evidence; fail to evaluate claims objectively, interpreting policy provisions in an arbitrary and unreasonable manner; make unreasonably low settlement offers; rely on minor misrepresentations in the insurance application or where their agents knowingly complete false applications; or exert coercion designed to compel compromise of a claim. See *Emerson v. American Bankers Insurance Co.*, 223 Ill. App. 3d 929, 936 (1992), citing Annot., 33 A.L.R.4th 579 (1984).

That said, I turn to the majority's reasoning. The majority concludes that section 155 does not preempt a separate and independent tort involving insurer misconduct such as fraud. 174 Ill. 2d at 519, 528. The majority finds that a first-party claim alleging insurer bad faith and unfair dealing is not within that category. "Mere allegations of bad faith or unreasonable and vexatious conduct, without more, however, do not constitute such a tort." 174 Ill. 2d at 528. One problem with this reasoning, however, is that, contrary to the majority's view of the issue, a claim for third-party insurer bad faith and unfair dealing does not come within this category, either. Contrary to the majority's statements, third-party coverage claims for bad faith are based, like first-party claims, on an implied duty arising from the insurance contract. See *Olympia Fields Country Club v. Bankers Indemnity Insurance Co.*, 325 Ill. App. 649, 662 (1945); *Cernocky v. Indemnity Insurance Co. of North America*, 69 Ill. App. 2d 196, 206 (1966); *Scroggins v. Allstate Insurance Co.*, 74 Ill. App. 3d 1027 (1979); *Twin City Fire Insurance Co. v. Country Mutual Insurance Co.*, 23 F.3d 1175, 1178 (7th Cir. 1994) ("that duty [good faith] is founded on the insurance contract itself").

Furthermore, it is simply not true, as the majority asserts, that the good-faith "principle" is used only as a construction aid in determining the intent of contracting parties. 174 Ill. 2d at 524. It is well established that an insurance contract is one of adhesion. To that extent, the relationship of insured and insurer has elements reflective of a fiduciary relationship, and also bears the obligations attendant to that relationship. It is therefore incorrect for the majority to contend that good faith is no more than an *aid* to construal of a contract.

As such, third-party bad-faith claims are no more separate and independent tort actions than are such claims in the first-party context. Moreover, this court has recognized that an insurer has an implied duty to act in good faith towards insureds with regard to settlement. *Krutsinger v. Illinois Casualty Co.*, 10 Ill. 2d 518, 527-28 (1957). Notably, *Ledingham v. Blue Cross Plan for Hospital Care of Hospital Service Corp.*, 29 Ill. App. 3d 339 (1975), relied on the existence of this same implied-in-law duty of good faith and fair dealing in the context of a first-party coverage claim. This court then later approvingly cited *Ledingham* for the proposition that the same conduct may both breach a contract as well as constitute a separate and independent tort. *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 187 (1978).

Thus, the distinction that the majority seeks to draw between bad-faith claims in the first-party context and those in the third-party context does not withstand scrutiny. If bad-faith claims must fall in one area, because they are essentially creatures of contract, so must they fall in the other area. We thus swiftly approach the "slippery slope."

Furthermore, section 155, entitled "Attorney fees," speaks primarily to what statutory remedies are recoverable under the provision. The provision's language presumes the existence of either a coverage dispute,

whether first or third party, a claims payment dispute, a loss payable dispute, or a delay in claims settlement. 215 ILCS 5/155 (West 1994). Such claims can encompass more than a breach of the insurance contract, and indeed, the provision is applied in fact to a broad range of claims against the insurer. See *W.E. O'Neil Construction Co. v. National Union Fire Insurance Co.*, 721 F. Supp. 984 (N.D. Ill. 1989) (refusal to contribute to settlement); *Keepes v. Doctors Convalescent Center, Inc.*, 89 Ill. App. 2d 36 (1967) (refusal to pay insured's creditors); *Phillips v. Inter-Insurance Exchange of the Chicago Motor Club*, 91 Ill. App. 3d 198 (1980) (auto liability insurer's refusal to stack med pay coverage).

Consequently, I believe the preemptive scope of section 155 is more appropriately distinguishable on the basis of the statutory remedies it provides, rather than on whether the conduct is independently based in tort or contract. Thus, I adhere to that increasing trend of majority opinions which hold that section 155 preempts attorney fees and punitive damages, but not compensatory damages. *W.E. O'Neil Construction Co.*, 721 F. Supp. at 998; *Chicago HMO v. Trans Pacific Life Insurance Co.*, 622 F. Supp. 489 (N.D. Ill. 1985); *Calcagno v. Personalcare Health Management, Inc.*, 207 Ill. App. 3d 493 (1991); *Kohlmeier v. Shelter Insurance Co.*, 170 Ill. App. 3d 643 (1988); *McCall v. Health Care Service Corp.*, 117 Ill. App. 3d 107 (1983); *Lynch v. Mid-America Fire & Marine Insurance Co.*, 94 Ill. App. 3d 21 (1981); *Hoffman v. Allstate Insurance Co.*, 85 Ill. App. 3d 631 (1980); *Schienfield v. American Family Mutual Insurance Co.*, 624 F. Supp. (N.D. Ill. 1985); *American Dental Ass'n v. Hartford Steam Boiler Inspection & Insurance Co.*, 625 F. Supp. 364 (N.D. Ill. 1985); *UNR Industries, Inc. v. Continental Insurance Co.*, 607 F. Supp. 855 (N.D. Ill. 1984); see also *Kaniuk v. Safeco Insurance Co.*, 142 Ill. App. 3d 1070 (1986) (leaving question open as to compen-

satory damages); *Debolt v. Mutual of Omaha*, 56 Ill. App. 3d 111 (1978) (same).

In general, several factors support these decisions. For one, as mentioned, section 155 specifically addresses attorney fees, costs of the action, and limited penalties. No mention is made in the provision of any compensatory remedies and, indeed, the provision is premised on the very existence of a "core" action against an insurer. See *UNR Industries*, 607 F. Supp. at 866 (language expressed belies intention to address problem of compensating insured for damages sustained). Further, this core action is not limited in terms of its legal basis, but only in terms of the factual nature of the alleged insurer misconduct. Second, it was not until 1977, two years following the *Ledingham* decision, that the legislature amended the statute to include specific limited penalties in addition to attorney fees. Thus, it may also be wrong to discount *Ledingham*, which only *expanded* bad-faith recovery beyond third-party coverage claims to punitive damages in the area of first-party coverage claims, for failing to mention section 155. See *Kinney v. St. Paul Mercury Insurance Co.*, 120 Ill. App. 3d 294, 298 (1983). At the time that *Ledingham* was decided, section 155 did not include penalties *per se* and, thus, the provision posed no potential conflict with and was, therefore, inapplicable to the *Ledingham* analysis. See *Emerson*, 223 Ill. App. 3d at 935; but see *American Dental*, 625 F. Supp. at 368 (provision was at least punitive in nature at enactment). Additionally, I note that many of the cases which later discounted *Ledingham* suffer from inconsistencies in their own approach (see *UNR Industries*, 607 F. Supp. at 867), or they either simply cite precedent without engaging in analysis.

Also, close examination of the legislative history of section 155 reveals that there was no legislative intent that the provision cover compensatory claims. See *UNR*

*Industries,* 607 F. Supp. 855. Furthermore, the *Hall/Cunningham* preemption analogy relied on by the majority does not diminish the strength of these several factors because subsequent authorities have shown that that preemption analogy is incomplete. See *Barr Co. v. Safeco Insurance Co. of America,* 583 F. Supp. 248, 255 (N.D. Ill. 1984).

Finally, even the majority recognizes the utility of a bad-faith tort cause of action in the realm of third-party coverage. 174 Ill. 2d at 525-26. Insureds may be exposed to damages beyond the value of their contract, and for which, otherwise, they may not recover. I am not at all convinced, as is apparently the majority, that the same reasoning fails to hold sway within the context of first-party coverages simply because an insured there can sue for proceeds due under the policy and seek attorney fees and penalties for insurer misconduct limited to $25,000. I can easily conceive of scenarios where, for instance, a small homeowner insured places trust in his first-party coverage property insurer to his detriment at a cost far beyond contract compensatory damages and the provision's limited statutory penalties. It makes no sense, in terms of the balance of society's interests, that a small policy insured may have sufficient remedies in one instance, but not in the other.

As a final matter, I would hold, contrary to the majority's reasoning, that the suit limitation clause here applies to bar plaintiff's attempted fraud action. The clause refers to actions against the insured and is not limited only to actions upon the policy. As a result, this alleged action, whether sounding in fraud, contract, or bad faith, does not survive the bar.

JUSTICE HARRISON, dissenting:

The majority has made a basic analytical error that is probably inadvertent but certainly unfair.

The issue before the circuit and appellate courts was

whether plaintiff's *pro se* claim against its insurer for common law fraud was preempted by section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 1994)) or time-barred by a limitations provision contained in the insurance policy. This issue was raised in the context of a motion for summary judgment under section 2—1005 of the Code of Civil Procedure (735 ILCS 5/2—1005 (West 1994)), and both the circuit and appellate courts concluded that neither the Code section nor the contractual limitations provision defeated plaintiff's claim. Accordingly, the circuit court denied summary judgment, and the appellate court affirmed on a Rule 308 appeal (155 Ill. 2d R. 308).

My colleagues now reverse and remand with directions to enter summary judgment in favor of the insurer. That decision, however, has nothing to do with the lower courts' reasoning. The majority agrees that section 155 of the Code does not preempt a common law fraud claim, and they decline to reach the limitations question. The reason my colleagues believe that summary judgment should be entered in favor of the insurer on plaintiff's common law fraud claim is simply that the allegations in plaintiff's complaint are insufficient to state such a claim.

The problem with this approach is that it overlooks how summary judgment is supposed to work. Contrary to the majority's apparent belief, summary judgment cannot be used to challenge the sufficiency of a plaintiff's complaint. The reason is simple. As this court has repeatedly held, a motion for summary judgment assumes that a cause of action has been stated. *Delgatto v. Brandon Associates, Ltd.*, 131 Ill. 2d 183, 190 (1989); *Janes v. First Federal Savings & Loan Ass'n*, 57 Ill. 2d 398, 406 (1974). If the existence of a valid cause of action is assumed by the motion, granting the motion on the theory that a cause of action has not been properly stated, as the majority does here, is illogical.

Although we can affirm the judgment of a lower court on any grounds called for by the record (*Leonardi v. Loyola University*, 168 Ill. 2d 83, 97 (1995)), we should be reluctant to reverse for reasons that were not raised below, and the logical inconsistency of the majority's opinion is a good illustration of why that is so. What makes the majority's mistake especially troublesome to me .is that it has left the plaintiff with no means for salvaging his case. This is not a situation where the plaintiff elected to stand on his pleadings after they were dismissed by the trial court. As previously noted, the sufficiency of the pleadings did not become an issue until now, and until now, the plaintiff had no reason to believe that his common law fraud allegations required modification. Now that the pleading defects cited by the majority have been brought to the plaintiff's attention, there is every reason to believe that he would be able to cure them if given the opportunity.

By remanding with directions to enter judgment in favor of the insurer, the majority has denied plaintiff that opportunity. Such a result is incompatible with the principle that a cause of action should not be dismissed on the pleadings unless it is clearly apparent that no set of facts can be proven which would entitle a plaintiff to relief. *Grzeszczak v. Illinois Farmers Insurance Co.*, 168 Ill. 2d 216, 223 (1995). If, by amendment, a plaintiff can state a cause of action, a case should not be dismissed with prejudice on the pleadings. *Bowe v. Abbott Laboratories, Inc.*, 240 Ill. App. 3d 382, 389 (1992).

The majority's result likewise contravenes the summary judgment statute. Subsection (g) of that statute expressly provides:

> "Before or after the entry of a summary judgment, the court shall permit pleadings to be amended upon just and reasonable terms." 735 ILCS 5/2—1005(g) (West 1994).

Under my colleagues' analysis, this statutory right to amend has been nullified.

A situation similar to the one present here was addressed by the appellate court in *Sinclair v. State Bank*, 226 Ill. App. 3d 909 (1992). There, the circuit court refused to dismiss the plaintiff's complaint, but on a Rule 308 appeal (134 Ill. 2d R. 308), the appellate court reversed, holding that the trial court should have dismissed plaintiff's complaint on the pleadings. No remand was ordered. When the plaintiff subsequently attempted to amend his complaint in the circuit court to cure the pleading defects, the defendant objected, arguing that the appellate court's reversal, without remand, constituted an adjudication on the merits, leaving the trial court without power to take further action in the case.

Although the trial court agreed with the defendant, the appellate court subsequently reversed. It held that where a defendant brings a Rule 308 appeal involving pleadings that were not dismissed on the trial level and the complaint is found to be fatally deficient for the first time on that appeal, the plaintiff should still be allowed to amend his complaint "unless the Rule 308 appellate opinion necessarily forecloses all theories of recovery." 226 Ill. App. 3d at 915.

The majority's disposition here clearly does not foreclose all theories of recovery. It merely holds that the existing pleadings are inadequate to state a cause of action. For the reasons set forth above, the court is therefore wrong to reverse and remand with directions that judgment be entered in favor of the insurer. Plaintiff should be afforded the chance to plead again. Accordingly, I dissent.

CHIEF JUSTICE BILANDIC joins in this dissent.