### HOME INSURANCE COMPANY, Plaintiff and Counterdefendant,

v.

### THREE I TRUCK LINE, INC., Defendant and Counterplaintiff,

v.

### Risk Enterprise Management, Limited, Counterdefendant.

No. 98 C 7343.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 16, 1999.

Robert Marc Chemers, Michael Anthony Clarke, David S. Osborne, Pretzel & Stouffer, Chtd., Chicago, IL, for Plaintiff/Counterdefendant Home Insurance Company.

Robert Marc Chemers, David S. Osborne, Pretzel & Stouffer, Chtd., Chicago, IL, for Counterdefendant Risk Enterprise Mangement, Ltd.

John H. Mathias, Jr., Christopher C. Dickinson, Paul R. Walker–Bright, Jenner & Block, Chicago, IL, for Defendant/Counterplaintiff Three I Truck Line, Inc.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Both Home Insurance Company ("Home") and Risk Enterprise Management, Limited ("Risk Enterprise") have filed motions to dismiss the Counterclaim advanced against each of them by Three I Truck Line, Inc. ("Three I"). Because nothing that Home and Risk Enterprise can say in reply can diminish the force of the controlling authorities that have been adduced by Three I in its single memorandum responding to both the Home and the Risk Enterprise motions and supporting memoranda (something like the inability to stuff an omelet back into the eggshells from which it came), this Court has directed that no such replies be filed. Instead this memorandum opinion and order explains in reasonably brief compass (all that is really required) why each of the motions to dismiss must be and is denied.

### Home's Potential Liability

On Three I's allegations, which must of course be accepted as true on any Fed. R.Civ.P. 12(b)(6) motion such as those at issue here, Home and Risk Enterprise took over the exclusive control of Three I's defense of two major tort actions, both of which stemmed from the same serious highway accident and in each of which Three I was one of three defendants. Home and Risk Enterprise then proceeded to abandon ship as to the amount of Three I's liability exposure, by abandoning the comprehensive defenses that Three I's own lawyers had previously developed to the plaintiff's damages claims. All too predictably, that jettisoning of Three I's interests produced jury verdicts aggregating in excess of $42.5 million, with Three I being found 55% at fault. And that leaves

Three I in a serious hole, for Home's liability policy provides only $16 million in coverage.[1]

■ Three I charges Home not only with bad faith in its handling of the litigation (if Three I is right, as must be assumed for now, "mishandling" would be a better description), but also for its bad faith in refusing to entertain a present post-trial opportunity to settle within the $16 million policy limit. Yet Home urges that no such tort is recognized under Illinois law.[2]

That is just dead wrong when, as here, an insurer assumes the exclusive management and control of its insured's defense. That is the clear teaching of our Court of Appeals (applying Illinois law) in *Transport Ins. Co. v. Post Express Co.*, 138 F.3d 1189, 1192–93 (7th Cir.1998).[3]

■ Indeed, in almost the height of irony, an even more recent Seventh Circuit opinion attached to Home's Memorandum of Law as its Ex. B (cited by Home on another issue) drives the nails even more deeply into the Home coffin—for *Westchester Fire Ins. Co. v. General Star Indem. Co.*, 183 F.3d 578, 582 (7th Cir.1999) says this:

> In Illinois, an insurer is liable to its insured for a judgment exceeding policy limits when the insurer refuses, negligently or in bad faith, to settle litigation within policy limits. *See Certain Underwriters of Lloyd's v. General Accident Ins. Co.*, 909 F.2d 228, 232 (7th Cir. 1990); *Steele v. Hartford Fire Ins. Co.*, 788 F.2d 441, 442 (7th Cir.1986). Since

the insurer generally has exclusive control over the defense and settlement of a claim, the duty of due care and good faith protects the insured against the possibility that "the insurer would consider only its monetary interests in deciding whether or not to settle, ignoring the risk of an excess verdict which would be borne entirely by the insured." *Certain Underwriters of Lloyd's,* 909 F.2d at 232.

To be sure, that excerpt speaks only of an insurer's refusal to settle. But in the same context of an insurer's exclusive control over a claim in litigation, its abandonment of its insured's substantive defenses that exposes the insured to liability far in excess of the policy limit clearly fits the same analytical mold.

None of the cases cited by Home alters that analysis in the situation alleged by Three I. In fact, the very case on which Home attempts to place its principal reliance *expressly* recognizes the type of claim advanced by Three I here (one in the third-party claim context)—see *Cramer v. Insurance Exchange Agency*, 174 Ill.2d 513, 525, 221 Ill.Dec. 473, 675 N.E.2d 897, 903 (1996). Like *Westchester Fire Ins.*, *Cramer* talks specifically only of the insurer's "duty to settle" as an independent tort—and that holding expressly validates one aspect of Three I's claims here, that under Count II.

But the identical policy considerations that inform that analysis also apply with at least equal force to the degree of total faithlessness to the insured's interests in-

1. In fact, the pending appeal by a codefendant, if successful, could leave Three I naked to an even greater extent.

2. This Court's July 28, 1999 memorandum opinion and order dealt with several choice of law issues in this litigation. In part it spoke of the absence of any conflict between Illinois and Iowa law on the tort issues involved in Three I's counterclaims, something that had been admitted by Three I and that had not

been challenged by Home after the tort counterclaims were filed.

3. Though *Transport Ins., id.* at 1192 suggested that "bad faith" might be a less accurate label than characterizing the insured's contention as "a contractual claim informed by principles of negligence," any such difference of view as to the appropriate label does not get in the way of the viability of the claim as such.

volved in an insurer's taking over total control of the litigation and then leaving the insured helplessly vulnerable to a judgment that, for lack of any defense, can (and does) reach massive proportions. As an *Erie v. Tompkins*-mandated predictor of the likely response of the Illinois Supreme Court to that scenario, this Court holds that court would not find that Home's alleged conduct was "merely vexatious and unreasonable," such as to be insulated by 215 ILCS ⁵⁄₁₅₅ from the tort action asserted by Three I's Count I (174 Ill.2d at 522–24, 221 Ill.Dec. 473, 675 N.E.2d at 902–03). And this Court is in impeccable company in reaching that conclusion: After a thoughtful and extended analysis by our Court of Appeals, *Transport Ins.*, 138 F.3d at 1192–93 upheld a jury verdict in the insured's favor under strikingly similar circumstances.

■ Home's motion to dismiss is therefore denied. It is ordered to answer the Counterclaim on or before September 27, 1999.[4]

### Risk Enterprise's Potential Liability

This case poses a unique situation: Risk Enterprise is not merely a claim agent employee of Home, a situation in which our Court of Appeals has recently held that no asserted bad faith denial of a claim against such a person is actionable (*Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878, 879 (7th Cir.1999) (citation omitted)):

> Any liability on Comte's [the employee's] part would therefore be derivative of his employer's. Such a result would turn

traditional respondeat superior doctrine on its head.

\*       \*       \*       \*       \*       \*

Because he is considered a stranger to the insurance contract, the employee of a defendant insurance company who is not a party to the insurance contract cannot be liable for breach of the duty of good faith and fair dealing.

Instead Counterclaim ¶ 4 portrays Home as an empty shell, with Risk Enterprise essentially having taken its place by managing all of Home's affairs .(Home itself has no employees, with Risk Enterprise being staffed by Home's former employees). Counterclaim ¶ 5 goes on to allege that Risk Enterprise has the sole responsibility for managing Home's affairs under those circumstances, necessarily including the handling of all claims made against policies previously issued by Home.

In that circumstance there seems to be no reason not to treat Risk Enterprise (unlike the employee in a case such as *Schwartz* ) as owing Three I the same type of duties that have been discussed in the preceding section of this opinion. Risk Enterprise's motion is also denied, and it too is ordered to answer the Counterclaim on or before that same date.[5]

---

**4.** There is one exception to what has been said in the text. Home has also challenged Three I's prayer for an award of attorneys' fees, citing *Westchester Fire Ins.* on that point. Three I has not responded, and in the absence of anything further in that regard it will be assumed that Three I will not be entitled to that added relief if it were to succeed on its Counterclaim.

**5.** This ruling is somewhat more chancy than the earlier one, given the absence of any Illinois authority on the specific issue involved as to Risk Enterprise. Because this Court is performing an *Erie v. Tompkins* function, what has been said here is open to possible revision if future developments were to cast more light on the subject.