# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*O'Connor v. Country Mutual Insurance Co.*, 2013 IL App (3d) 110870

---

| | |
|---|---|
| Appellate Court Caption | DORENE O'CONNOR, Plaintiff-Appellant, v. COUNTRY MUTUAL INSURANCE COMPANY, Defendant-Appellee. |
| District & No. | Third District<br>Docket No. 3-11-0870 |
| Filed | March 5, 2013 |
| Rehearing denied | April 5, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A judgment denying relief to plaintiff in her action for damages under section 155 of the Insurance Code based on allegations that her insurer acted unreasonably and vexatiously in failing to settle her underinsured motorist claim was upheld, since her insurer's offer of less than half of what she was awarded in arbitration, standing alone, did not establish that the offer was unreasonable, and her insurer presented sufficient evidence that it used reasonable standards in evaluating claims, even though it did not have a manual for such evaluations. |
| Decision Under Review | Appeal from the Circuit Court of Kankakee County, No. 05-L-170; the Hon. Kendall O. Wenzelman, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | John Bernard Cashion (argued), of Northfield, for appellant. |
| | |
| | Keith G. Carlson (argued), of Carlson Law Offices, of Chicago, for appellee. |
| | |
| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion. |
| | Presiding Justice Wright and Justice Carter concurred in the judgment and opinion. |

## OPINION

¶ 1    Plaintiff Dorene O'Connor filed this action against defendant Country Mutual Insurance Company alleging that it unreasonably and vexatiously failed to settle her underinsured motorist insurance claim. The trial court entered judgment in favor of Country Mutual, finding that O'Connor did not prove that County Mutual engaged in unreasonable and vexatious conduct. O'Connor appealed. We affirm.

¶ 2                 FACTS

¶ 3    Plaintiff Dorene O'Connor was injured in an automobile accident in June 2002, suffering a broken leg and sustaining more than $24,000 in medical expenses. Defendant Country Mutual Insurance Company provided automobile insurance to O'Connor with a policy that included limits of $250,000 for underinsured motorist (UIM) coverage and $10,000 for medical payments coverage. Pursuant to its policy, Country Mutual paid O'Connor the full $10,000 in medical coverage. She also received a $105,000 payout from the tortfeasors' insurers. In November 2004, Country Mutual offered a settlement of $40,000 under the policy's UIM provisions. O'Connor estimated her damages at $202,450 and offered to settle her claim with Country Mutual for $97,500. The parties failed to reach an agreement on a settlement amount under the UIM provisions and in December 2005 proceeded to arbitration as required by the policy. The issue for the arbitrators' determination was damages. Following the conclusion of evidence, the arbitrators entered an award of $213,295 to O'Connor, subject to $115,000 in setoffs, for a net payment of $98,295. Country Mutual promptly paid the arbitration award and O'Connor deposited the award check.

¶ 4    O'Connor filed a two-count complaint, seeking, in part, damages under section 155 of the Illinois Insurance Code (Code) (215 ILCS 5/155 (West 2002)). In March 2007, she filed an amended complaint for section 155 damages, alleging the following: (a) the arbitration award was more than twice Country Mutual's offer, "raising an inference that the defendant failed and refused to evaluate and pay plaintiff's claim *** in an objectively reasonable sum prior to arbitration"; (b) Country Mutual gave insufficient deference to O'Connor's interests; and (c) Country Mutual failed to use any objective criteria in evaluating O'Connor's claim.

Country Mutual filed a motion to dismiss, which the trial court denied. Discovery took place with many motions by both parties seeking disclosure or to bar disclosure of discovery materials. The trial court ultimately issued a ruling that attorney-client and work-product privileges protected only three of the documents O'Connor requested from Country Mutual's claim files. The privileged documents concerned preparation for the instant litigation. Immediately prior to trial, O'Connor filed her trial memorandums, raising for the first time that the trial court should consider section 154.6 of the Code as a standard for determining whether Country Mutual's conduct was unreasonable and vexatious under section 155 of the Code. 215 ILCS 5/154.6, 155 (West 2002).

¶ 5    A trial took place. The Country Mutual litigated-claims attorney who handled O'Connor's file after May 2005 testified. In evaluating claims, she did not use any manuals, written procedures, bulletins, leaflets or computer programs. She looked at everything in the files and analyzed all cases on their merits. The practice at Country Mutual was to hire outside counsel who would take discovery depositions of medical and occurrence witnesses, review medical files and bills, and report on the value on the case. She received summaries, updates, and other documents from outside counsel. She considered different criteria case-by-case, not by case type, and evaluated first-party claims the same as third-party claims. She did not try to lowball offers because of pressure or to impress her supervisors. She evaluated claims for their reasonable value and did not weigh the interest of Country Mutual in doing so. She sought to determine the right value in the community for a given injury. She did not specifically recall the instant case, but knew the claim was assigned to her in May 2005, after outside counsel had been given $40,000 settlement authority. She did not consider the award in the instant case to be substantially above the offer.

¶ 6    The claims attorney who first handled O'Connor's claim for Country Mutual testified. Country Mutual did not use a written claims manual but the insurance policy operated as a manual, for example, spelling out the arbitration procedure. In a UIM claim like the instant claim where damages were at issue, Country Mutual would hire outside counsel, who would conduct discovery regarding the nature of the injury, any special damages claimed, the type of permanency, the impression the insured would make as a witness, community verdicts, and the differences between going to trial or to arbitration. Generally, he would attempt to settle a claim instead of going to arbitration and in his experience 90% of claims would settle. Evaluations were done case-by-case and not based on a computer program. After discussions with outside counsel regarding O'Connor's claim and based on counsel's evaluation, the claim was valued at $145,000 to $155,000, which calculated to $30,000 to $40,000 above what had already been paid to O'Connor by Country Mutual and the other insurers.

¶ 7    Outside counsel who took the case to arbitration testified. He would share significant information with the Country Mutual claims attorney but not every detail in the case. His general evaluation procedures in UIM arbitration cases included reviewing the claim files and the underlying case, other offers and settlements, the injuries and medical files, and factors such as the locality, permanency of the injuries, lasting disabilities, age, gender/role, kind of injury, and disfigurement. In O'Connor's case, he took her sworn statement about her claim, injury, permanency, and lifestyle changes. He obtained her medical records and

deposed the orthopedic surgeon who treated her broken leg. O'Connor's initial demand was the policy limits of $135,000 with a subsequent demand of $98,000. He made several offers to O'Connor based on his evaluation, with the last offer of $40,000. In determining a value, he looked at the value of the entire case and subtracted amounts already paid to reach the settlement amount. The arbitration award O'Connor received was a high award, nearly 10 times the medical expenses, with an insured who had healed well, with no permanent injury, future medical expenses, wage loss or dependents. While the $58,000 between the offer and award was a substantial amount for him, in insurance defense, an award 25% greater than an offer does not constitute a substantial difference.

¶ 8    Following the close of evidence, the trial court issued a ruling that O'Connor failed to prove the allegations in her complaint that Country Mutual acted vexatiously and unreasonably in settling the claim. The trial court found Country Mutual engaged in good faith settlement negotiations and did not intentionally delay the settlement process. The trial court considered that Country Mutual was "fully engaged in attempting to present a *bona fide* defense" and "did present a *bona fide* defense as to the magnitude of the loss." The trial court found that Country Mutual did not violate section 155 and entered judgment in its favor. O'Connor appealed.

¶ 9                                                ANALYSIS

¶ 10    The issue on appeal is whether the trial court erred when it found that Country Mutual did not engage in vexatious and unreasonable conduct in failing to settle O'Connor's claim. O'Connor maintains that the trial court erred in finding that Country Mutual's conduct was not unreasonable and vexatious because the arbitration award was substantially greater than the settlement offer made by Country Mutual. On appeal, she presents a number of arguments that the trial court's judgment was in error and that she is entitled to damages based on Country Mutual's violation of section 155. O'Connor relies on section 154.6 of the Code as a standard to establish a section 155 violation.

¶ 11    Section 154.6 of the Code sets forth acts which constitute improper claims practice, including:

"(c) Failing to adopt and implement reasonable standards for the prompt investigations and settlement of claims under its policies;
***
(e) Compelling policyholders to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them;
* * *
(n) Failing in the case of the denial of a claim or the offer of a compromise settlement to promptly provide a reasonable and accurate explanation of the basis in the insurance policy or applicable law for such denial or compromise settlement[.]" 215 ILCS 5/154.6(c), (e), (n) (West 2002).

¶ 12    Section 155 of the Code states:

"Attorney fees. (1) In any action by or against a company wherein there is in issue *** the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed [60% of the recovery amount, $60,000, or excess over amount offered in settlement and the amount to which the insured is entitled to recover]." 215 ILCS 5/155(1)(a)-(c) (West 2002).

¶ 13    Section 155 is an extracontractual remedy for policyholders available when an insurer's refusal to pay a claim is vexatious and unreasonable. *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 520 (1996). The purpose of the statute is to provide a remedy for insurer misconduct and to make actions by policyholders economically feasible. *Cramer*, 174 Ill. 2d at 521. The key question in an action under section 155 is whether the conduct of the insurance company was unreasonable and vexatious. *West Bend Mutual Insurance v. Norton*, 406 Ill. App. 3d 741, 745 (2010). The relevant inquiry is whether the insurer had a *bona fide* defense to the insured's claim. *Norton*, 406 Ill. App. 3d at 745. This court reviews the trial court's determination on whether an insured's conduct in settling a claim was vexatious and unreasonable for an abuse of discretion. *Norton*, 406 Ill. App. 3d at 744.

¶ 14    O'Connor argues that the trial court relied on inapposite cases and incorrectly used them to "trump" the statutory standard of improper claims practice set forth in section 154.6 of the Code. We consider O'Connor's argument to be misplaced. The cases to which O'Connor objects, *Norton*, 406 Ill. App. 3d at 746, *Buais v. Safeway Insurance Co.*, 275 Ill. App. 3d 587, 592 (1995), and *McGee v. State Farm Fire & Casualty Co.*, 315 Ill. App. 3d 673, 685 (2000), instruct that when an insurer presents a *bona fide* defense, a section 155 action cannot be maintained. As such, these cases are applicable. In determining that Country Mutual's conduct was not unreasonable and vexatious, the trial court pointed to a lack of evidence that Country Mutual "refused to engage in good faith settlement negotiations" or intended to delay the arbitration process. The trial court found Country Mutual was "fully engaged in attempting to present a *bona fide* defense." Moreover, without specifically determining whether section 154.6 presents a standard applicable to evaluate section 155 claims, the trial court stated that even if the improper claims practice allegations were considered, O'Connor failed to prove Country Mutual's conduct was unreasonable and vexatious. *Mathis v. Lumbermen's Mutual Casualty Insurance Co.*, 354 Ill. App. 3d 854, 860 (2004) (Department of Insurance rule violation is factor trial court may consider regarding insurer's conduct).

¶ 15    Despite the trial court's findings, O'Connor asks this court to find as a matter of law that the arbitration award was substantially more than Country Mutual's offer. There is no factual or legal support for her request. Country Mutual offered to settle for $40,000 and O'Connor sought $97,500 during settlement negotiations. The arbitration panel awarded her $98,295, which Country Mutual promptly paid. The arbitration panel's award of an amount more than twice Country Mutual's offer does not in itself establish as a matter of law that Country Mutual violated section 154.6(e) of the Code or that it acted unreasonably or vexatiously. *McGee*, 315 Ill. App. 3d at 685 (offer not *per se* unreasonable because it was less than arbitration award).

¶ 16    O'Connor further argues that the lack of a Country Mutual claims manual or procedure

for evaluating claims violates sections 154.6(c) and (n) because Country Mutual lacked a reasonable means to evaluate claims and explain its denial. Testimony at the trial established that Country Mutual employed a method for investigating and evaluating O'Connor's claim and other litigated claims. The two claims attorneys from County Mutual who handled O'Connor's claim explained the steps they employed in valuing claims generally and O'Connor's claim specifically. Both claims attorneys looked to outside counsel to do the investigative and evaluative work on claims, including O'Connor's claim. Outside counsel testified to the steps he took in investigating and evaluating O'Connor's claim and the factors he considered in making a settlement suggestion, including O'Connor's injury and age, and that she healed well, did not suffer any permanent damage and did not need further medical treatment. All three witnesses testified that claims are evaluated on a case-by-case basis and that implementing a formulaic approach to claims evaluation as suggested by O'Connor would not be feasible. There was ample evidence presented that Country Mutual used reasonable standards for claims settlement and its witnesses were able to explain the basis of its proffered settlement. Although the trial court seemingly considered O'Connor's section 154.6 allegations as factors in reaching its section 155 determination, it was not required as a matter of law to find Country Mutual's offer to be "substantially less" than the arbitration award or that Country Mutual's evaluation and settlement practices were unreasonable and violative of sections 154.6 and 155 of the Code. *American Service Insurance Co. v. Passarelli*, 323 Ill. App. 3d 587, 590 (2001) (sections 154.5 *et seq.* are regulatory in nature and do not give rise to a private remedy). We find the trial court properly determined O'Connor did not establish that Country Mutual's practices violated section 156.4(c) or (n).

¶ 17 Next, O'Connor complains that in a section 155 action, an insurer should not be able to assert attorney-client privilege to shield its claim documents and then defend itself on the basis that its claim settlement was not unreasonable or vexatious. According to O'Connor, Country Mutual impliedly waived any privilege for documents it used in evaluating her claim because the reasonableness of the evaluation is at issue in a section 155 action. *Lama v. Preskill*, 353 Ill. App. 3d 300, 305 (2004) (at-issue waiver occurs when party voluntarily injects factual or legal issue the resolution of which requires examination of the privileged documents). O'Connor argues that she was improperly hampered in cross-examining the defense witnesses because of the trial court's evidentiary rulings. There were only three documents which the trial court excluded based on attorney-client privilege and they were concerned with the section 155 litigation, not the claim settlement or arbitration process. O'Connor had access to the rest of Country Mutual's claim documents. O'Connor presents no basis for the adoption of a bright line rule regarding application of at-issue waivers in section 155 actions.

¶ 18 Because O'Connor failed to present evidence that Country Mutual's actions in settling her claim were unreasonable and vexatious, we find the trial court properly entered judgment in favor of Country Mutual and against O'Connor.

¶ 19 The judgment of the circuit court of Kankakee County is affirmed.

¶ 20 Affirmed.